**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NIKE, INC.,<br><br>    Plaintiff,<br><br> v.<br><br>BY KIY, LLC,<br>NICKWON ARVINGER,<br>DAVID WEEKS,<br>RELOADED MERCH, LLC,<br>BILL OMAR CARRASQUILLO, and<br>XIAMEN WANDERING PLANET<br>IMPORT AND EXPORT CO., LTD.,<br><br><br><br>    Defendants. | CASE NO. 1:22-cv-10176-VM<br><br>**(1) COUNTERCLAIM TO INVALIDATE AND CANCEL NIKE'S UNENFORCEABLE TRADEMARKS;**<br><br><br>**(2) ANSWER TO COMPLAINT OF NIKE, INC. AND AFFIRMATIVE DEFENSES; AND**<br><br><br>**(3) DEMAND FOR JURY TRIAL** |
| BY KIY, LLC,<br><br>    Counterclaimant,<br><br> v.<br><br>NIKE, INC.,<br><br>    Counterclaim-Defendant. | |

1

## <u>TABLE OF CONTENTS</u>

COUNTERCLAIM .................................................................................................... 3

I.        PRELIMINARY STATEMENT ............................................................. 3

II.       JURISDICTION AND VENUE ............................................................. 7

III.      THE PARTIES ......................................................................................... 8

IV.       THE TRADE DRESS REGISTRATIONS AT ISSUE IN THE
          COUNTERCLAIM ................................................................................... 8

V.        NIKE'S PURPORTED "MARKS" ARE NOT ENFORCEABLE
          TRADEMARKS UNDER THE LANHAM ACT AND PATENT ACT OF 1952,
          AS AMENDED ....................................................................................... 14

VI.       BY KIY IS FAMOUS BRAND IN ITS OWN RIGHT AND ITS "LIGHTNING
          BOLT"  TRADEMARK IS DISTINCTIVE IN ITS OWN RIGHT .................... 17

VII.      BY KIY SHOES ARE SOLD IN DIFFERENT CHANNELS OF COMMERCE
          THAN NIKE SHOES ............................................................................. 23

VIII.     BY KIY'S SHOES ARE DISTINCTIVE ................................................ 29

IX.       NIKE FAILS TO PROSECUTE OTHER SNEAKERS THAT INCORPORATE
          THE PURPORTED TRADE DRESS REGISTRATIONS .................................. 33

X.        NIKE HAS NOT USED ITS PURPORTED TRADE DRESS ON ALL JORDAN
          1 SNEAKERS ....................................................................................... 38

COUNT I:  DECLARATORY JUDGMENT FOR INVALIDITY AND CANCELLATION OF
          THE '305 REGISTRATION .................................................................. 38

COUNT II:  DECLARATORY JUDGMENT FOR INVALIDITY AND CANCELLATION OF
          THE '064 REGISTRATION .................................................................. 40

COUNT III:  DECLARATORY JUDGMENT FOR INVALIDITY AND CANCELLATION OF
          THE '691 REGISTRATION .................................................................. 41

COUNT IV:  DECLARATORY JUDGMENT FOR INVALIDITY AND CANCELLATION OF
          THE '694 REGISTRATION .................................................................. 42

REQUEST FOR RELIEF ........................................................................................ 43

ANSWER        ............................................................................................... 44

DEMAND FOR JURY TRIAL ............................................................................... 69

## **COUNTERCLAIM**

Counterclaimant and Defendant By Kiy, LLC (collectively, "Counterclaimant" or "By Kiy") allege against Counterclaim-Defendant Nike, Inc. ("Nike"), upon knowledge as to its own acts and upon information and belief as to the acts of others, as follows:

**I.      PRELIMINARY STATEMENT**

1.      By Kiy, LLC ("By Kiy") is a brainchild of two, young black American entrepreneurs, Nickwon "Kiy" Arvinger and David Weeks.  It is a cutting-edge design house with an entrenched and loyal following among celebrities, professional athletes, students at historically black colleges and universities ("HBCUs"), sneaker aficionados (so-called "sneakerheads"), and people who are looking for something different than the norm.

2.      By Kiy makes both shoes and other "streetwear" apparel, all prominently emblazoned with By Kiy's name and distinctive "Lighting Bolt" design that appears prominently on the sides of each of its shoes and on each of its other products:



3.      The Lightning Bolt is Registered Trademark, Reg. No. 6932389.  A copy of the Trademark Registration for By Kiy's Lightning Bolt is attached as Exhibit A hereto.

4.        The lightning bolt looks nothing like Nike's "Swoosh."

5.        By Kiy shoes are a different type of product than the athletic shoes Nike sells. By Kiy shoes use an extraordinary range of materials fabrics, leathers, and colors.  They are highly creative – more a form of *commercial art* than shoes to be used for basketball and other sports.  Consumers seek out By Kiy's brand image.

6.        By Kiy shoes are very expensive – much more expensive than a typical Nike shoe.  They are sold through completely different channels of commerce than Nike's shoes, including By Kiy-branded pop-up stores that appear for only a couple of days in a given city and disappear; and through a By Kiy-branded "drop app" ("By Kiy App") which is conspicuously branded as a By Kiy service for paid By Kiy members (with no express, implied, or *desired* affiliation with Nike); and/or direct email marketing to paid members; and/or through direct marketing over Instagram and other social media by those who follow By Kiy.  Each of these sales channels are clearly branded as exclusively "By Kiy."  There is no conceivable way that any reasonable consumer would think he or she is buying a Nike product when the consumer buys a By Kiy product, whether in the primary or secondary sales markets.  Nike has presented zero pleading or evidence to the contrary.

7.        In streetwear and sneaker culture, the shoes, clothing, and brands you wear are signifiers of what you value and who you support.  By Kiy shoes are culturally resonant in a different way than Nike shoes.  The folks paying $300 or more for sneakers are sophisticated consumers in a specific channel of commerce who know very well that they are not buying Nikes, but are buying shoes from a black-owned and black-operated creative business.  Nike – for all its success – does not have this sort of cache or image and never can.  While Nike has made its wealth by endorsing black athletes, it is a big corporation that has historically been run predominately by white people.  Nike is as "corporate" as an investment bank – and, much as Nike tries to distract from this fact through cynical associations with Colin Kaepernick and others –  everyone knows it.  Nike's appeal to some customers is undeniable, but it is a fundamentally different sort of appeal than By Kiy's intimate and personal appeal to its

particular community of customers, followers, and members.  By Kiy is a part of the community to which it sells; Nike is not.

8.     Nike remarkably seems to concede many of these facts in their Complaint, even including cherrypicked social media postings where members of the public express different views about By Kiy products.  While some of the postings indicated that some people do not like By Kiy products and would prefer Nike products, none of them seem confused about who designed, manufactured, advertised or sold any By Kiy products.  There is no indication that anyone thinks By Kiy products are Nike products.  This is a fatal flaw in Nike's case.

***

9.     Nike has a history of aggressive trademark litigation like this case.  The Complaint in this case is essentially a "cookie-cutter" pleading, very similar to those used by Nike in other cases.  Nike has engaged in unduly aggressive, disproportionate, highly burdensome litigation strategies against much smaller opponents, where the actual or threatened litigation process itself appears to be a deliberate means of oppression, rather than simply a mechanism to resolve disputes.  In discovery, Nike has knowingly dumped unrequested documents of no conceivable relevance on litigation opponents with an intent to burden and oppress.  Nike has mass-designated documents in such productions as confidential, even when there is no legitimate basis for such designations.  After burdening opposing parties in discovery, Nike has pressured settlements that, on information and belief, seek to secure limitations on business conduct beyond that otherwise required by law, including trademark law.

10.     Here, as elsewhere, Nike has asserted rights based on registered trademarks that it knows are of questionable validity.  Nike also has submitted a flurry of recent trademark applications trying to further broaden its illegitimate dominion over how others design sneakers.  As explained below, the designs are not the makings of proper trademarks.  Much as there are "patent trolls," Nike increasingly acts as a "trademark troll."

11.     Nike's strategy aims to quash competition and intimidate legitimate businesses, including small American designers that often lack the resources to defend themselves against

5

such a well-resourced opponent as Nike.  This approach stifles creativity and allows Nike to control the sneaker market to an extraordinary extent, far beyond what the law actually allows. There is a bullying nature to these actions that chills creativity, artistic expression, and lawful competition.

12.     The claims in this Counterclaim are not based on Nike's "Swoosh," which is a valid trademark and appears, on information and belief, on all Nike products and identifies products as being made by Nike.  This Counterclaim addresses Nike's trademark claims based on essentially generic aspects of shoe designs that are not protectible under the trademark laws. While Nike wishes to be the only maker of shoes with certain designs, many shoes over many decades have had similar designs.  Even Nike's claim to be the "originator" of such common designs is, on information and belief, false.  Nike has borrowed the designs of others and, in fact, built its brand in part by doing so.  *See e.g.*, "Which Came First: The Nike Cortez or Onitsuka Tiger Corsair?," Jan. 29, 2023, Sᴺᴇᴀᴋᴇʀ Fʀᴇᴀᴋᴇʀ Mᴀɢᴀᴢɪɴᴇ,

https://www.sneakerfreaker.com/features/which-came-first-nikes-cortez-or-onitsuka-tigers-corsair?page=0

13.     On information and belief, Nike's shoes have a Swoosh prominently on the shoe and Nike has rigorous standards for the use of the Swoosh in order to make it consistently recognizable.  On information and belief, all of the "Dunks" and "Jordans" sold by Nike that are at issue in this case have a large Swoosh prominently featured on both, the inside and the outside of the upper of each shoe. The Swoosh is the most recognizable element of the shoes and, on information and belief, is the only visual mechanism by which nearly all consumers recognize a shoe as a Nike.  On information and belief, the absence of a Swoosh, makes it clear to all that the product is not a Nike; so, if one removes a "Swoosh" from the side of the shoe, it does not appear to be a Nike product.

14.     On information and belief, Nike has never presented any credible evidence or persuasive argument, let alone any empirical showing (e.g., an impartial study of consumer conduct), that its claims of distinctive trade dress or likelihood of confusion have any basis in

reality.  In this lawsuit and others, Nike relies on an assertion of imagined rights and manufactured claims of damage that is conclusory and not supported by any credible evidence.

15.     And, as demonstrated by Nike's own Complaint, there is no credible argument that there is any confusion in the marketplace about By Kiy's shoes – they are known to be By Kiys and to not be Nikes.  By Kiy shoes are sold in different channels and at different price points than Nike products.  All of the disputed shoes are intended to be different and distinctive than Nike's shoes – something different, creative, and innovative.  Consumers, on information and belief, do not believe Nike makes By Kiy shoes.  The very point of By Kiy shoes and other boutique sneakers – the very commercial and emotional appeal – is that they are not made by Nike, Adidas, or other big corporate manufacturers.  It is part of why people love these sorts of products and why By Kiy has such a strong consumer following.

***

16.     Finally, Nike claims that the settlement discussions between the parties prior to the filing of the action show that By Kiy's purported infringement is intentional.  Quite to the contrary, By Kiy refused to sign on to a settlement that would give away rights to Nike that Nike does not have by law.  Nike wanted to negotiate an improvement on the trademark laws for itself – a greater restriction on By Kiy's conduct than that provided in the law.  By Kiy tried to work out a reasonable, pragmatic solution over the course of approximately 10 months, but Nike refused.  There was little discussion regarding the law.  Nike approach is dictatorial and lawless; it wants the market for certain types of sneakers all for itself even if the law does not provide for that outcome.  By Kiy will not cede Nike rights that are beyond those in the law.

## II.     **JURISDICTION AND VENUE**

17.     This Court has original jurisdiction over By Kiy's claims for declaratory judgment for trademark invalidity under 28 U.S.C. §§ 1331 and 1338(a), the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq*., and 15 U.S.C. § 1121 in that said claims arise under the Trademark Laws of the United States, 15 U.S.C. §§ 1051 *et seq*.

18.      This Court has personal jurisdiction over Nike because it conducts business in and maintain substantial contacts within the State of New York and in this District.  Nike has purposefully availed itself to commercial activities in this forum and this Counterclaim arises out of those activities.

19.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1391(c), because a substantial part of the events giving rise to the claims alleged herein occurred in this District and Nike conducts business in this District.

**III.      THE PARTIES**

20.      Upon information and belief, Nike is a corporation organized under the laws of the State of Oregon with a principal place of business at One Bowerman Drive, Beaverton, Oregon 97005.

21.      By Kiy is a limited liability company organized under the laws of the State of New Jersey with a principal place of business at 7221 Kennedy Blvd., North Bergen, New Jersey 07047.

**IV.      THE TRADE DRESS REGISTRATIONS AT ISSUE IN THE COUNTERCLAIM**

22.      In this Counterclaim, By Kiy seeks a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that Nike's U.S. Trademark Reg. Nos. 3,711,305; 3,721,064; 6,368,694; and 6,368,691 (collectively, the "Trade Dress Registrations") are invalid and unenforceable as a matter of law because the purported trade dress embodied by the registrations consists entirely of functional, non-distinctive features, some of which may have potentially been patentable once upon a time (ending in the 1980s) but were never timely patented, and cannot be validly trademarked.

23.      Upon information and belief, on November 25, 2008, Nike filed U.S. Trademark Application No. 77/621,641 for the following trade dress design:



24.     Upon information and belief, on November 17, 2009, the aforementioned trademark application registered as U.S. Trademark Reg. No. 3,711,305 (the "'305 Registration"). A true and correct copy of the Registration Certificate for the '305 Registration is attached as <u>Exhibit B</u>.

25.     According to the Registration Certificate for the '305 Registration, the description of the mark is as follows:

> The mark consists of the design of the stitching on the exterior of the
> shoe, the design of the material panels that form the exterior body of
> the shoe, the design of the wavy panel on top of the shoe that
> encompasses the eyelets for the shoe laces [sic], the design of the
> vertical ridge pattern on the sides of the sole of the shoe, and the
> relative position of these elements to each other. The broken lines
> show the position of the mark and are not claimed as part of the mark.

26.     The limitations in the scope of the trademark are important to consider. The purported trade dress does not include the entire shoe. It doesn't even include the elements that seem to appear above, which include dotted lines that are "not claimed as part of the mark." Subtracting the dotted lines from the '305 design, this is the extent of Nike's asserted trademark:



27.     This disembodied image is not the makings of valid or plausible trademark or trademark claim.  No reasonable consumer would see the above image and say "that's a Nike." Without a Swoosh, the purported trade dress depicted in these registrations does not have sufficient secondary meaning to be perceived as a designation of origin.  Moreover color, color schemes, and other design aspects are not part of the alleged mark.

28.     On information and belief, while Nike has sued By Kiy related to the '305 Registration, it has made no shoes based on the design reflected in the '305 Registration.  By Kiy disputes the registration but also believes there is no factual basis for any allegations against it related to the purported mark, because it has not made any shoes that arguably incorporate it.

29.     Upon information and belief, on November 25, 2008, Nike filed U.S.Trademark Application No. 77/621,665 for the following trade dress design:



30.      Upon information and belief, on December 8, 2009, the aforementioned trademark application registered as U.S. Trademark Reg. No. 3,721,064 (the '"064 Registration"). A true and correct copy of the Registration Certificate for the '064 Registration is attached as Exhibit C. According to the Registration Certificate for the '064 Registration, the description of the mark is as follows:

> The mark consists of the design of the tread on the sole a [sic] shoe. The broken lines show the position of the mark on the goods and are not claimed as a part of the mark. Color is not claimed as a feature of the mark.

31.      Upon information and belief, only recently, on July 30, 2020, Nike filed U.S. Trademark Application No. 90/086,080 for the following trade dress design:



32.      Upon information and belief, on June 1, 2021, the aforementioned trademark application registered as U.S. Trademark Reg. No. 6,368,694 (the '"694 Registration"). A true and correct copy of the Registration Certificate for the '694 Registration is attached as Exhibit D. According to the Registration Certificate for the '694 Registration, the description of the mark is as follows:

> The mark consists of a three-dimensional configuration comprising the design of the material panels that form the exterior body of the shoe, the design of the panel on top of the shoe that includes the eyelets for the shoe laces [sic], the design of the ridge pattern on the sides of the sole of the shoe, the design of a stitched line running along the midsole

11

of the shoe, and the relative position of these elements to each other.

The broken lines show the position of the mark and are not claimed as

part of the mark. Color is not claimed as a feature of the mark.

33.     As with the '305 design, the limitations of the trademark are important to

consider.  Once again, the purported trade dress does not include the entire shoe.  It does not

include the elements that seem to appear above, which include dotted lines that are "not claimed

as part of the mark."  Subtracting the dotted lines from the '694 design, this is the extent of

Nike's asserted trademark:



34.     The above is not the makings of valid or plausible trademark or trademark claim.

Once again, no reasonable consumer would see the above image and say "that's a Nike" or

associate it with any shoe purportedly designed by Nike.  Without a Swoosh, the purported trade

dress depicted in the registration does not have sufficient secondary meaning to be perceived as a

designation of origin.  Moreover color, color schemes, and other design aspects are not part of the alleged mark.

35.       Upon information and belief, only recently, on July 31, 2020, Nike filed U.S. Trademark Application No. 90/085,898 for the following trade dress design:



36.       Upon information and belief, on June 1, 2021, the aforementioned trademark application registered as U.S. Trademark Reg. No. 6,368,691 (the "'691 Registration").  A true and correct copy of the Registration Certificate for the '691 Registration is attached as Exhibit E. According to the Registration Certificate for the '691 Registration, the description of the mark is as follows:

> The mark consists of a three-dimensional configuration comprising the design of the material panels that form the exterior body of the shoe, the design of the panel on top of the shoe that includes the eyelets for the shoe laces, the design of the ridge pattern on the sides of the sole of the shoe, the design of a material panel on the heel, the design of a stitched line running along the midsole of the shoe, and the relative position of these elements to each other. The broken lines show the position of the mark and are not claimed as part of the mark. Color is not claimed as a feature of the mark.

37.       As with the '305 and '694 designs, the limitations of the trademark are important to consider.  Subtracting the dotted lines from the '691 design, this is the extent of Nike's asserted trademark:



38.      Once again, the above image is not the makings of valid or plausible trademark or trademark claim.  Without a Swoosh, it is not recognizable as a Nike.  In fact, on information and belief, it is only a Swoosh that makes a Nike product recognizable to consumers as a Nike product.

39.      The purported trade dresses depicted in the Trade Dress Registrations does not have sufficient secondary meaning to be perceived as a designation of origin.

**V.      NIKE'S PURPORTED "MARKS" ARE NOT ENFORCEABLE TRADEMARKS UNDER THE LANHAM ACT AND PATENT ACT OF 1952, AS AMENDED**

40.      The scope of Nike's Trade Dress Registrations is unlawful and a dangerous assault on legitimate competitive enterprise.  The courts have cautioned against such use of trade dress trademarks, because of their potentially damaging impact on legitimate competition.

41.      Each of the "marks" depicted and described in the Trade Dress Registrations are not "trademarks" within the meaning of 15 U.S.C. §1127.  That is, the purported "marks" are not a "word, term, name, symbol, or device" used "on" or "in connection with" "goods" within the meaning of 15 U.S.C. §1125(a)(1), but rather *features* or *functional designs* of goods.

42.     By Kiy's review of the documents on the United States Patent and Trademark Office ("USPTO") Trademark Status and Document Retrieval website has raised additional concerns.  Nike's 2009 applications for the '305 Registration and the '064 Registrations strongly support the conclusion that the Trade Dress Registrations should never have been issued.  In fact, the USPTO examining attorney initially rejected each of the '305 Registration and the '064 Registrations on the grounds that (1) that the purported "marks" were functional; and (2) that the purported "marks" were non-distinctive.

43.     Nike's response was telling.  It submitted two materially identical and conclusory declarations for each of the '305 Registration and the '064 Registrations.  *See* Exhibit F.  They were not from an independent expert but from Kelly Hibler ("Hibler"), a Nike executive.

44.     The declarations made a series of unsupported and mostly irrelevant statements that were more a marketing spiel than actual factual evidence that might support the applications.  Hibler declared, for instance:

> NIKE employs a rigorous design and manufacturing process in
>
> creating new shoes.  It is neither the shortest, nor the cheapest way to
>
> make shoes.  However, it is critical to meet the consumer's
>
> expectations for quality that consumers associate with NIKE.

None of this vapid puffery is verifiably true and none of it had anything to do with whether the purported "mark" was capable of protections as trade dress.

45.     The predominant gist of the Hibler declarations appears to be a claim that Nike works hard on its designs, that the "Dunks" had been a popular product for a long time, and that Nike had generated an immense amount of revenue from them.  But even if a company claims to work hard on popular products and make a lot of money from them, it does not make every aspect of those products protectible under the trademark laws.

46.     There was essentially no evidentiary support provided by Nike for the conclusion that purported "marks" were non-functional.  There appears to have been absolutely no evidentiary showing that the characteristics in the purported marks were independently

15

distinctive trade dress.  There appears to have been no showing that the features in the purported trade dress were not present in shoes other than Nikes.  Hibler's Declarations for Support of Claim for Registration under 2(f) of the Lanham Act, which are both included in Exhibit F, baldly asserted without any factual basis, such as market research, that the mark was "distinctive."  The opinion does not constitute a credible factual showing and does not comply with the USPTO's guidance for evidentiary requirements to establish distinctiveness.

47.       It is hard to imagine that the characteristics reflected in the Trade Dress Registrations would even be noticeable to any consumer, let alone as something sufficiently recognizable and distinctive to qualify as protectible trade dress.  After all, there are two big "Swoosh" marks on the sides of each Dunk shoe that tends to overwhelm the observability of the purported "marks" in the Trade Dress Registrations for the side of the shoes – the disembodied images above.  Additionally, people tend to walk on the soles of their sneakers without given the pattern on them a second thought.  There is nothing distinctive about the sole in the '064 Registration.

48.       The fact is that all of the Trade Dress Registrations describe generic characteristics (i.e., the commonplace shell of a shoe and non-distinctive, generic sneaker sole).  There does not appear to have been any plausible pleading by Nike that the Trade Dress Registrations might be perceived by relevant persons – or even the most dedicated "sneakerheads" or sneaker enthusiasts – as designating *origin* (i.e., "Nike made these shoes") rather than simply a *style of shoe*.

49.       In securing the registration of the Trade Dress Registrations, Nike never appears to have submitted evidence sufficient to conclude that the characteristics of the Trade Dress Registrations do not actually affect the *quality* of shoes containing the "mark"; on information and belief, the characteristics are, in fact, integral to the performance, durability, and safety of this sort of shoe.  The lines claimed by Nike in the drawings submitted are made of different materials and in shapes that impact the functionality. These features were even updated in later models of "Air Jordan 1 Retro High OG" versions and many other Nike shoes.  So, it would

16

appear that the Trade Dress Registrations actually consist of *arguably patentable*, but *non-patented* characteristics of the shoes.

50.     In the process of its trademark applications for some of the Trade Dress Registrations, the USPTO asked if Nike had patented any of these characteristics. Nike admitted that they had never patented any of them. Nike also admitted to having sold the shoes with the each of the characteristics since at least 1985. So, the time for any patenting passed in or about 1987 (about the same time as for the '691 Registration and '694 Registrations) and these functional designs and features have long been in the public domain as a matter of federal patent law and that precludes the validity of a purported trademark for the same designs, as a matter of Supreme Court precedent. *See e.g.*, *Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 234, 237–38, 84 S. Ct. 779, 782, 11 L. Ed. 2d 669 (1964).

51.     Regardless, on information and belief, even if the Trade Dress Registrations were valid, the Trade Dress Registration designs have been used repeatedly, in some form or other, by other designers in the decades before and since the "Dunks" and "Jordans" came on the market in the 1980s. As such, Nike has effectively acquiesced to such use decades ago.

52.     The Trade Dress Registrations are not enforceable trademarks; they are really something quite different: decades-old, never-registered potentially patentable characteristics of products masquerading as trademarks.

53.     On information and belief, Nike has previously asserted claims based on similarly specious trademarks and then sought to prevent an adjudication of the validity of the Trade Dress Registrations on the merits for fear that they would lose.

## VI.     BY KIY IS FAMOUS BRAND IN ITS OWN RIGHT AND ITS "LIGHTNING BOLT" TRADEMARK IS DISTINCTIVE IN ITS OWN RIGHT

54.     Messrs. Arvinger and Weeks have a remarkable American success story. They are not "bad actors," as Nike suggests, but two diligent and intelligent young men who have worked long hours to build a sneaker and apparel company based on artistic creativity and cultural synergy. By Kiy's designs belong to By Kiy and no one else.

17

55.      Over the last decade, Mr. Arvinger has become an internationally known designer of footwear and clothing.  Mr. Weeks is a resourceful entrepreneur, designer, and Arvinger's business partner.  Together, they are an impressive team, with an uncanny aptitude for using digital marketing and social media to promote the By Kiy brand and By Kiy products with humor and creativity to their community.

56.      Mr. Arvinger made a name for himself as a streetwear designer at a young age. Mr. Arvinger attended college for graphic design.  He then started his own business, and began to build his own brand.  "By Kiy" is Mr. Arvinger's namesake.  His friends and family call him "Kiy" (pronounced "Kai").

57.      Mr. Arvinger's designs and creativity were immediately acknowledged and embraced by the public and his community. At that time, Arvinger created the Support Black Colleges brand (Trademark Registration #5595593, and Trademark Registration #5595595, attached as Exhibit G), that he currently co-owns and operates with his family.  Support Black Colleges® ("SBC") has collaborated with the National Basketball Association ("NBA") and many Historically Black Colleges and Universities ("HBCU").  Mr. Arvinger's designs and innovations are based on his experiences and the experiences of those around him, particularly his ties to the black community.  In addition to his success as an entrepreneur, Arvinger makes efforts to give back to his family and community.

58.      Before working with Mr. Arvinger – Mr. Weeks played a role in building other successful brands.  He has travelled the world speaking about fashion, art, and design. Mr. Weeks' own artwork has been exhibited in museums throughout the United States.  His current work "Plastic Is Wack" ® (Trademark Registration # , 6,815,172), attached as Exhibit H), is a 10 foot sculpture that he is using to promote a non-profit community organization he created that picks up plastic and other garbage at beaches.

59.      By Kiy has attracted other brands, athletes, musicians, celebrities, and designers to collaborate with the Company.  By Kiy designs tour merchandise for top artists such as, 15-time Grammy® award winning and platinum-selling recording artist Alicia Keyes, GUNNA,

Chief Keef and many others.  And By Kiy's designs have been embraced by famous athletes and celebrities, as depicted in some representative screenshots from Instagram below:



**KIY**  kool.kiy                                        ...



♡  ○  ⊿                                                  🔖

Liked by **alex.howlers** and **2,734 others**

kool.kiy JERSEY

**KIY**  kool.kiy                                        ...



♡  ○  ⊿                              •                   🔖

Liked by **racksonstacksz** and **3,517 others**

kool.kiy My Brother @damianlillard Always Repping
🙏 🙏



**KIY** kool.kiy ...

♡ Liked by davidweeksnyc and **4,982 others**
kool.kiy Congrats To @errolspencerjr 💪🏾💪🏾💪🏾
Rocking Those Road Runner Kiys On The Victory Night 🙏

**KIY** kool.kiy ...

♡ Liked by scxcky and **14,130 others**
kool.kiy Big Bro @therealswizzz In Them
@hommefemmela KIYS 🔥



**KIY** kool.kiy ...

♡ Liked by scxcky and **12,238 others**
kool.kiy Appreciate The Love @souljaboy 💪🏾
View all 170 comments
souljaboy 🔥
February 12, 2022





60.     As pictured, By Kiy shoes are worn by famous and talented trendsetters.  It is not uncommon for an NBA player to wear a Nike athletic sneaker on the court, and a By Kiy fashion sneaker to walk in front of the cameras after the game.  On information and belief, none of these athletes or other sneaker wearers think they are wearing Nikes when they are wearing By Kiys; they know perfectly well By Kiy shoes are not Nikes.

61.     By Kiy has also entered into licensing and marketing deals with certain HBCUs, whereby By Kiy integrates HBCU logos and colors into shoe designs.  These efforts and others have helped cement By Kiy's relationship with the black community.

## VII.   BY KIY SHOES ARE SOLD IN DIFFERENT CHANNELS OF COMMERCE THAN NIKE SHOES

62.     There is another piece of context that seems important here in understanding why Nike is suing here.  In high-end sneakers and elsewhere there is disruptive change in the fashion industry.  In recent years, there has been a burgeoning cottage industry of American designers that, on information and belief, Nike believes to pose a threat to Nike's business not because of intellectual property issues, but because the new designers offer consumers high-quality, artistically creative, interesting, and comprehensively customizable products.  On information and belief, Nike has struggled to keep up with this trend and has itself sold shoes that seem to mimic the designs of certain smaller designers, including By Kiy, which has earned them criticism from the design community.

63.     The fact is that Nike, for all of its success, is not necessarily where a certain sort of sophisticated consumer goes for novelty.  Unlike Nike's familiar, mass-produced corporate products, the new products of small designers are niche; some consumers clearly prefer buying shoes that have an element of unusualness, cleverness, humor, creativity, and whimsy over those issued by a large corporation.  The appeal of the products depend on a personal connection between the designers and people running the business and consumers – Nike appears to misunderstand the appeal of the By Kiy shoes.  There is a growing presence of American

designers, and a large number of consumers willing to pay significant money or more for interesting sneakers made by them.

64.      In fact, on information and belief, it is difficult to find any evidence of actual confusion in the marketplace regarding the origin of By Kiy's designs.  Rather, the sneakerheads who pay more than $300 or more for sneakers are enthusiasts.  They know shoes.  They collect shoes.  They talk about shoes online.  They stand in line overnight for a sneaker release the following day.  They understand the history and origins of different designs.  They are, in a very narrow and deep channel of commerce, sophisticated, knowledgeable, and demanding consumers.  They have differing tastes that they feel very strongly about.  Some are connoisseurs of original and rare Nike or Adidas or other "big brand" corporate designs.  Some prefer new shoes by small designers like By Kiy.  But, regardless, they know what they are buying and who designed it.

65.      The sort of online discussions among sneakerheads referenced by Nike in its Complaint seem to center not on who actually designed or made the shoes (which was always self-evident) but whether By Kiy's artistic departures from the Nike design was cool or not.  Much as listeners might disagree on jazz improvisations based on a common tune, sneakerheads have different tastes and different opinions on By Kiy shoes.  There is no material evidence of actual confusion regarding origin, the most concrete test of "likelihood of confusion."

66.      It is apparent from any examination of the current market for sneakers that Nike's commoditized, mass-market products move in different channels of commerce than products sold by By Kiy.

67.      Unlike Nike shoes, By Kiy shoes are not easy for consumers to purchase.  A consumer cannot walk into his or her local retail store or mall and purchase a By Kiy shoe.  By Kiy shoes are not on the shelf at nationwide departments stores next to Nike shoes.  A typical sneaker consumer – for example, a mom who knows relatively little about "sneaker culture" and is looking to buy her child shoes to wear to school – will not encounter a By Kiy shoe in the same store that they find a Nike shoe.

24

68.         By Kiy shoes are made in very limited quantities, and sold exclusively through the By Kiy App or the By Kiy webpage to "By Kiy" members .  For many sneakers, quantities are limited.  Consumers have to *get lucky* to buy a By Kiy shoe; a prospective purchaser has to catch a 15-30 minute window (a "flash sale") in which the sneaker is available.

69.         The purchasing process is relatively involved and requires navigating multiple screens – all of which clearly feature the By Kiy Registered Trademark #5250479 (*see* Exh. A), as well as other By Kiy logos.  Moreover, there are legal terms of service for sneaker purchases and other legal documents that make clear purchasers are buying from By Kiy.  The Kiy App features By Kiy's trademarks only and does not contain any Nike marks or Nike products for sale.

70.         In addition, By Kiy has a paid membership program that provides members exclusive access to many By Kiy shoes and products.  A member paying for access to purchase By Kiy shoes and other products is not confused and knows exactly who is selling By Kiy shoes.

71.         Other than the Kiy App, consumers can purchase By Kiy shoes at one or two-day in-person pop-up events hosted by By Kiy.  Consumers camp out overnight waiting in line to attend these pop-up events to purchase By Kiy's shoes.

72.         By Kiy pop-up store is a cultural event of sorts. The consumers waiting in line at pop-up events know they are waiting for By Kiy shoes.  They are "loud and proud" in their support of By Kiy and black-owned businesses.  People come out who care about the brand and its products and who want to share with others a common interest and a common admiration for black entrepreneurial success:

 **kool.kiy**
Downtown Boston

•••



❤️   💬   ✈️                                          🔖

 Liked by **alex.howlers** and **7,089 others**

**kool.kiy** BOSTON ! … Appreciate Y'all For Showing This Love .. & Want To Thank My Fans For Making This Happen .. I Ain't Verified Or In Those Hype… more



73.     Fans publicly share in their experiences with the By Kiy brand on social media. By Kiy shoes have become a part of their lives, including dads bonding with their sons and even a wedding proposal:



74.     Nike has tried to paint By Kiy as a nefarious "bad actor" gratuitously infringing on Nike's trademarks.  This claim is reckless, insulting, and untrue.  Nike should realize that it has no monopoly on success and does not have to demean the efforts of others to be a great company.  By Kiy is a part of a promising renaissance in American clothing design.  Nike has had absolutely nothing to do with the success of By Kiy and cannot lawfully interfere with By Kiy's sale of its products.

75.     And, as a final issue on "channels of commerce," there is the price.  By Kiy shoes can sell from $300+a pair. These prices are in line with other high end lifestyle brand shoes and

not a Nike "Jordan" or "Dunk." Consumers would carefully consider the price and be aware of this factor prior to making their purchase.

## VIII.   BY KIY'S SHOES ARE DISTINCTIVE

76.       The assumption underlying Nike's claims – i.e., that the By Kiy shoes are uncreative copies of Nike products – position is incorrect.  The differences between By Kiy shoes and Nike shoes are evident to any reasonable consumer.  In fact, consumers in the very YouTube videos and social media comments that Nike sited as a source in its Complaint pointed out the differences between the two brands shoes, as almost all consumers do.  On a version of the By Kiy shoes, for instance, there are at least 14 differences between the shoes, including without limitation:

1. Side panel:  the signature By Kiy bolt logo distinctively placed on the side panel extending into and past the front panel.  There is no Swoosh or (or Swoosh-like emblem) on the side of the shoe;

2. Collar:  a straight high collar with less curvature;

3. Eyelets (1):  a unique and distinctive double panel design on top of the shoe that encompasses the eyelets for the shoelaces;

4. Eyelets (2):  a straightened bottom panel on the double-panel design on top of the shoe that encompasses the eyelets for the shoelaces;

5. Front panel:  a new, unique, and distinctive front panel with the back part of the panel cut out to fit the front of the By Kiy signature bolt logo;

6. Back heel:  a unique and distinctive back heel panel that is split into two separate pieces and contains different stitching than Nikes Air Jordan 1;

7. Tongue:  a unique signature By Kiy logo (Registered Trademark No. 6932389) on the tongue with no Nike branding;

8. Outsole:  a unique outsole with wider panels and miniature By Kiy signature bolt logos throughout the outsole;

9. Toe box:  a higher more rounded toe box;

29

10. Insole:  a unique By Kiy branded insole;

11. Midsole:  a shorter more compact midsole due to the fact that By Kiy does not use Nike's air sole or anything similar in the midsole;

12. Outside/Inside Side Panels:  No Nike swoosh (or swoosh-like emblem) on any of these panels;

13. Outside Collar:  No Nike wings logo or branding; and

14. Tongue / General:  No "NIKE AIR" lettering on the tongue or anywhere else.









77.     The very intent of the characteristics of a By Kiy sneaker is to create distinctive

shoe that would be recognized as a By Kiy product.  The strong expectation was that such

characteristics would avoid a dispute with Nike or others, because By Kiy shoes differ so markedly from Nike Products and other trademarked products as a matter of trademark law.

78.        In addition to differences is the design, By Kiy shoes use premium, luxurious materials, such as premium leather, unusual fabrics, vibrant and unusual colors, and bold designs with unique slogans that resonate with By Kiy's followers.  By comparison, on information and belief, Nike uses cheaper materials and, recently, has had some well-publicized quality with some of their shoes, including mold on several models of their shoes that required Nike to cancel orders for its shoes. Li, Nocolaus, "Customers Receiving Air Jordan 1 High OG "Lost & Found" Covered in Mold," HYPEBEAST,Nov. 25, 2022 https://hypebeast.com/2022/11/air-jordan-1-high-og-lost-found-mold-issue-info .

## IX.        NIKE FAILS TO PROSECUTE OTHER SNEAKERS THAT INCORPORATE THE PURPORTED TRADE DRESS REGISTRATIONS

79.        By Kiy's shoes are noticeably different from Nike's shoes.  It should be noted that Nike has done very little to police the '694 Registration, or the '691 Registration, the '305 Registration or the '064 Registration.  While failing to police its marks, Nike is singling out By Kiy, seemingly because of its particular cultural resonance.

80.        On information and belief, as described in detail with images below, Nike has selectively policed its purported marks, allowing many similar shoes that, like the By Kiy shoes at issue here, did not include a Swoosh but another mark that distinguished those shoes from Nikes.  By Kiy's shoes are noticeably different from the Air Jordan 1's, however other companies have manufactured sneakers that more closely resemble the Air Jordan 1.  Despite this fact, Nike has done almost nothing to police the Trade Dress Registrations.

81.        For example, the Amiri Skel High Top appears to incorporate the purported trade dress elements claimed in the '694 Registration.  The sneaker resembles a Nike Air Jordan 1, except that a skeleton foot replaces the Swoosh design on the side of the upper, as depicted below:



82.    Upon information and believe, Nike has never claimed that the Amiri Skel High

Top sneaker infringes upon the '694 Registration.

83.    Rhude manufactures high-top sneakers that are very similar to the Nike Air

Jordan 1, and are actually sold at the same stores as Nike Air Jordan 1's. The Rhude Rhecess Hi




appears to incorporate many, if not all, of the purported trade dress elements in the '694 Registration, as depicted below:

84.     Upon information and believe, Nike has never claimed that the Rhude Rhecess Hi sneaker infringes upon the '694 Registration.

85.     The Golden Goose Sky Star is another similar example:

 

86.     Golden Goose's sneaker even has writing on the back heel that says "SNEAK ERS" in the same font and location as another Nike shoe, the Nike Terminator, as depicted below:



87.     Upon information and believe, Nike has never claimed that the Golden Goose Sky Star sneaker infringes upon the '694 Registration, or any other Nike intellectual property.

88.     Finally, the Court Classic by Saint Laurent incorporates many, if not all, of the purported trade dress elements claimed in the '694 Registration, as depicted below:



36

89.     Additionally, since 2002, Japanese clothing brand A Bathing Ape (Bape) manufactures and sells no less than six sneaker silhouettes that are identical to Nike sneaker silhouettes covered by Nike's purported trademark registrations. These incorporate many, if not all, of the purported trade dress elements that Nike claims in its registrations, as depicted below:



90.     Upon information and belief, Nike did not bring any claim that the Bape COURT STA High, or any of Bape's other shoes infringed upon the '694 Registration or Nike's intellectual property rights until it filed suit against Bape on January 25, 2023, *see Nike, Inc. v. USAPE LLC*, SDNY Case No. 1:23-cv-00660.  The lack of enforcement around the Bape's COURT STA model and other models for more than twenty years provided further reassurance to other creatives and brands of the invalidity and lack of concreteness of Nike's trade dress registrations.  Nike's inaction created a well-founded and reasonable belief that Nike would not enforce the Trade Dress Registrations as stated, and that a Swoosh design on the side of the upper designated a sneaker as a Nike product, and the lack of a Swoosh designated a sneaker as not being a Nike product.  Nike's own Complaint against Bape admits that they were aware of, and allowed, supposedly infringing products to be produced by Bape in the US at a large volume and scope since 2021.  Nike now claims that the Bape's COURT STA has always been an "Air Jordan 1 copy."

91.     Nike stated in its Complaint against BAPE that, "at all times prior to 2021, the quantity of BAPE's infringing footwear in the United States was never more than a small fraction of the millions of pairs Nike sells annually."  Upon information and belief, Nike provided this "*de minimis* argument" as reason that it did not claim that Bape's sneakers

37

infringed until 2023. But, under this standard, Nike should not have any concerns with By Kiy's brand and its footwear sales to the loyal followers and supporters that represent a tiny fraction of the millions, on millions of pairs Nike sells annually.

92.     The longstanding and consistent sale of Bape footwear and the legendary tale of its founder "NIGO" inspired many, including creatives like Mr. Arvinger and Mr. Weeks, to create new products.

## X.     NIKE HAS NOT USED ITS PURPORTED TRADE DRESS ON ALL JORDAN 1 SNEAKERS

93.     In addition to the above, Nike manufactures and sells different versions of the "Air Jordan 1" sneakers that do not contain the claimed trade dress elements.

94.     For example, in 1994 the "Air Jordan 1" that was manufactured and released to consumers was a different version, that was modified in many areas and did not visibly incorporate, some or all of the protected elements of the '694 registration that Nike provided the USPTO in 2020.

95.     In 2001, Nike introduced another modified "Air Jordan 1," which either modified, or did not visibly incorporate, some or all of the protected elements of the '694 Registration, as depicted below:

96.     Nike has recently submitted a flurry of applications for "trade dress" trademarks for a number of these designs. *See* Exhibit I. The net effect of this effort is anti-competitive control over the the sneaker market. This chills creativity and hurts free enterprise in ways that should concern any court or any consumer.

## COUNT I:  DECLARATORY JUDGMENT FOR INVALIDITY AND CANCELLATION OF THE '305 REGISTRATION

97.     By Kiy incorporates and realleges paragraphs 1 through 96 above as if fully set forth herein.

98.     This is a declaratory judgment action under the Trademark Laws of the United States, 15 USC § 1051 et seq., the Lanham Act, 15 U.S.C. §1125, et seq., the Patent Act of 1952, as amended, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

99.     One or more of the trade dress elements purportedly covered by the '305 Registration, namely the (a) the stitching on the exterior of the shoe; (b) the material panels that form the exterior of the shoe; (c) the panel on top of the shoe that encompasses the eyelets for shoe laces; (d) the vertical ridge pattern on the sides of the sole of the shoe; and (e) the relative position of these elements, has utilitarian functionality because such trade dress elements are essential to the use and purpose of the shoe and/or affect the cost, quality, performance, durability, and safety of the shoe.

100.     The features described in the '305 Registrations constitute unpatented design and functionality features that had been in the public domain for decades.  On information and belief, Nike tried to circumvent this inconvenient reality decades after the Dunks were first sold, by filing trademark applications for the Trade Dress Registrations that cannot withstand legal scrutiny.

101.     Invalid trademarks nonetheless have an unlawful, deforming impact on the competitive and free markets for sneakers by intimidating designers and manufacturers who fear Nike's litigiousness.

102.     Accordingly, the '305 Registration and the trade dress elements embodied therein are invalid and unenforceable as a matter of law.

103.     Nike's actions in asserting that By Kiy has infringed the '305 Registration has caused an actual and justiciable controversy within the jurisdiction of this Court under 28 U.S.C. §§ 2201 and 2202 with regard to the noninfringement of such trademark.

104.     The trade dress elements embodied in the '305 Registration are functional and patentable aspects of the Dunk shoe design that are in the public domain, and therefore Nike does not have valid, enforceable rights in the '305 Trademark.

105.     Accordingly, By Kiy is entitled to (1) a declaratory judgment that the '305 Registration is invalid as a matter of law due and (2) an order pursuant to 15 U.S.C. § 1119 cancelling the '305 Registration.

## COUNT II: DECLARATORY JUDGMENT FOR INVALIDITY AND CANCELLATION OF THE '064 REGISTRATION

106.     By Kiy incorporates and realleges paragraphs 1 through 96 above as if fully set forth herein.

107.     This is a declaratory judgment action under the Trademark Laws of the United States, 15 USC § 1051 et seq., the Lanham Act, 15 U.S.C. §1125, et seq., the Patent Act of 1952, as amended, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

108.     One or more of the trade dress elements purportedly covered by the '064 Registration, namely the depicted shoe tread, has utilitarian functionality because such trade dress elements are essential to the use and purpose of the sole and/or affect the cost, quality, performance, durability, and safety of the sole.  Accordingly, the '064 Registration and the trade dress elements embodied therein are invalid and unenforceable as a matter of law.

109.     The features described in the '064 Registrations constitute unpatented design and functionality features that had been in the public domain for decades.  On information and belief, Nike tried to circumvent this inconvenient reality decades after the Dunks were first sold, by filing trademark applications for the Trade Dress Registrations that cannot withstand legal scrutiny.

110.     Invalid trademarks nonetheless have an unlawful, deforming impact on the competitive and free markets for sneakers by intimidating designers and manufacturers who fear Nike's litigiousness.

111.     Nike's actions in asserting that By Kiy has infringed the '064 Registration has caused an actual and justiciable controversy within the jurisdiction of this Court under 28 U.S.C. §§ 2201 and 2202 with regard to the noninfringement of such trademark.

40

112.     The trade dress elements embodied in the '064 Registration are functional and patentable aspects of the Dunk shoe design that are in the public domain and, therefore Nike does not have valid, enforceable rights in the '064 Trademark.

113.     Accordingly, By Kiy is entitled to (1) a declaratory judgment that the '064 Registration is invalid as a matter of law due and (2) an order pursuant to 15 U.S.C. § 1119 cancelling the '064 Registration.

## COUNT III:  DECLARATORY JUDGMENT FOR INVALIDITY AND CANCELLATION OF THE '691 REGISTRATION

114.     By Kiy incorporates and realleges paragraphs 1 through 96 above as if fully set forth herein.

115.     This is a declaratory judgment action under the Trademark Laws of the United States, 15 USC § 1051 et seq., the Lanham Act, 15 U.S.C. §1125, et seq., the Patent Act of 1952, as amended, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

116.     One or more of the trade dress elements purportedly covered by the '305 Registration, namely the (a) the stitching on the exterior of the shoe; (b) the material panels that form the exterior of the shoe; (c) the panel on top of the shoe that encompasses the eyelets for shoe laces; (d) the vertical ridge pattern on the sides of the sole of the shoe; and (e) the relative position of these elements, has utilitarian functionality because such trade dress elements are essential to the use and purpose of the shoe and/or affect the cost, quality, performance, durability, and safety of the shoe.

117.     The features described in the '691 Registrations constitute unpatented design and functionality features that had been in the public domain for decades.  On information and belief, Nike tried to circumvent this inconvenient reality decades after the Dunks were first sold, by filing trademark applications for the Trade Dress Registrations that cannot withstand legal scrutiny.

118.    Invalid trademarks nonetheless have an unlawful, deforming impact on the competitive and free markets for sneakers by intimidating designers and manufacturers who fear Nike's litigiousness.

119.    Accordingly, the '691Registration and the trade dress elements embodied therein are invalid and unenforceable as a matter of law.

120.    Nike's actions in asserting that By Kiy has infringed the '691 Registration has caused an actual and justiciable controversy within the jurisdiction of this Court under 28 U.S.C. §§ 2201 and 2202 with regard to the noninfringement of such trademark.

121.    The trade dress elements embodied in the '691 Registration are functional and patentable aspects of the Dunk shoe design that are in the public domain, and therefore Nike does not have valid, enforceable rights in the '691 Trademark.

122.    Accordingly, By Kiy is entitled to (1) a declaratory judgment that the '691 Registration is invalid as a matter of law due and (2) an order pursuant to 15 U.S.C. § 1119 cancelling the '305 Registration.

## COUNT IV:  DECLARATORY JUDGMENT FOR INVALIDITY AND CANCELLATION OF THE '694 REGISTRATION

123.    By Kiy incorporates and realleges paragraphs 1 through 96 above as if fully set forth herein.

124.    This is a declaratory judgment action under the Trademark Laws of the United States, 15 USC § 1051 et seq., the Lanham Act, 15 U.S.C. §1125, et seq., the Patent Act of 1952, as amended, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

125.    One or more of the trade dress elements purportedly covered by the '305 Registration, namely the (a) the stitching on the exterior of the shoe; (b) the material panels that form the exterior of the shoe; (c) the panel on top of the shoe that encompasses the eyelets for shoe laces; (d) the vertical ridge pattern on the sides of the sole of the shoe; and (e) the relative position of these elements, has utilitarian functionality because such trade dress elements are

essential to the use and purpose of the shoe and/or affect the cost, quality, performance, durability, and safety of the shoe.

126.     The features described in the '694 Registrations constitute unpatented design and functionality features that had been in the public domain for decades.  On information and belief, Nike tried to circumvent this inconvenient reality decades after the Dunks were first sold, by filing trademark applications for the Trade Dress Registrations that cannot withstand legal scrutiny.

127.     Invalid trademarks nonetheless have an unlawful, deforming impact on the competitive and free markets for sneakers by intimidating designers and manufacturers who fear Nike's litigiousness.

128.     Accordingly, the '694 Registration and the trade dress elements embodied therein are invalid and unenforceable as a matter of law.

129.     Nike's actions in asserting that By Kiy has infringed the  '694 Registration has caused an actual and justiciable controversy within the jurisdiction of this Court under 28 U.S.C. §§ 2201 and 2202 with regard to the noninfringement of such trademark.

130.     The trade dress elements embodied in the '694 Registration are functional and patentable aspects of the Dunk shoe design that are in the public domain, and therefore Nike does not have valid, enforceable rights in the '694 Trademark.

131.     Accordingly, By Kiy is entitled to (1) a declaratory judgment that the '694 Registration is invalid as a matter of law due and (2) an order pursuant to 15 U.S.C. § 1119 cancelling the '305 Registration.

## **REQUEST FOR RELIEF**

WHEREFORE, By Kiy prays for judgment as follows:

132.     An Order against Nike declaring each of the '305 Registration; the '064 Registration; the '905 Registration; and the '374 Registration invalid and unenforceable as a matter of law;

133.     An Order pursuant to 15 U.S.C. §1119 commanding the Director of the United States Patent and Trademark Office to make appropriate entry upon the records of the USPTO to cancel the '305 Registration and the '064 Registration;

134.     A finding that this is an exceptional case and order that Nike be required to pay to By Kiy the costs of this action and By Kiy's reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a) or otherwise award By Kiy its reasonable attorney's fees; and

135.     Grant such further and other relief as the Court deems just and proper under the circumstances.

\* \* \*

## ANSWER

Defendants By Kiy, LLC, Nickwon Arvinger, and David Weeks (collectively, "By Kiy, Mr. Arvinger, and Mr. Weeks") hereby deny, admit, and aver, upon knowledge and upon information and belief as follows.

## PRELIMINARY STATEMENT

1.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations set forth in Paragraph 1 of the Complaint.

2.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations set forth in Paragraph 2 of the Complaint.

3.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations set forth in Paragraph 3 of the Complaint.

4.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations set forth in Paragraph 4 of the Complaint.

5.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations set forth in Paragraph 5 of the Complaint.

6.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations set forth in Paragraph 6 of the Complaint.

44

7.      By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations set forth in Paragraph 7 of the Complaint.

8.      By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations set forth in Paragraph 8 of the Complaint.

9.      By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations set forth in Paragraph 9 of the Complaint.

10.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations set forth in Paragraph 10 of the Complaint.

11.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations set forth in Paragraph 11 of the Complaint.

## **THE PARTIES**

*Note that, in the filed copy of Nike's Complaint, the numbering restarts at the a "The Parties" section.  The following responses correspond to the numbers that follow "The Parties" section in Nike's Complaint.*

1.    By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 1 of the Complaint and, therefore, deny all such allegations.

2.      By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegation set forth in Paragraph 2 of the  Complaint that Mr. Arvinger is a resident of New York.

3.      By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegation set forth in Paragraph 2 of the  Complaint that Mr. Weeks is a resident of New York.

4.      By Kiy, Mr. Arvinger, and Mr. Weeks deny that they are both "members and co-owners of By Kiy LLC." set forth in Paragraph 4 of the  Complaint.  Mr. Arvinger admits that he is a member of By Kiy LLC.

5.      By Kiy, Mr. Arvinger, and Mr. Weeks admit the allegation in Paragraph 5 of the Complaint.

6.      By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 6 of the Complaint and, therefore, deny all such allegations.

7.      By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 7 of the Complaint and, therefore, deny all such allegations.

8.      By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 8 of the Complaint and, therefore, deny all such allegations.

9.      By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 9 of the Complaint and, therefore, deny all such allegations.

## JURISDICTION AND VENUE

10.     By Kiy, Mr. Arvinger, and Mr. Weeks admit that Nike purports to state an action for trademark infringement, dilution, and unfair competition.

11.     By Kiy, Mr. Arvinger, and Mr. Weeks admit that this Court has subject matter jurisdiction over the purported claims under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

12.     By Kiy, Mr. Arvinger, and Mr. Weeks admit that this Court has supplemental jurisdiction over Nike's purported state claim claims pursuant to 28 U.S.C. § 1367.  By Kiy, Mr. Arvinger, and Mr. Weeks deny the remaining allegations set forth in Paragraph 12 of the Complaint.

13.     By Kiy, Mr. Arvinger, and Mr. Weeks admits that this Court may exercise jurisdiction over it. By Kiy, Mr. Arvinger, and Mr. Weeks deny the remaining allegations set forth in Paragraph 13 of the Complaint.

14.     By Kiy, Mr. Arvinger, and Mr. Weeks admits that that venue is proper in this District.  By Kiy, Mr. Arvinger, and Mr. Weeks deny the remaining allegations set forth in Paragraph 14 of the Complaint.

## FACTUAL BACKGROUND

### A.     NIKE

15.     By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 15 of the Complaint and, therefore, deny all such allegations.

16.     By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 16 of the Complaint and, therefore, deny all such allegations.

17.     By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 17 of the Complaint and, therefore, deny all such allegations.

18.     By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 18 of the Complaint and, therefore, deny all such allegations.

19.     By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 19 of the Complaint and, therefore, deny all such allegations.  To the extent the paragraph contains legal conclusions, no response is necessary.

### B.     NIKE'S AIR JORDAN 1 TRADE DRESS

20.     By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 20 of the Complaint and, therefore, deny all such allegations.

21.     By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 21 of the Complaint and, therefore, deny all such allegations.

22.     By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 22 of the Complaint and, therefore, deny all such allegations.

23.     By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 23 of the Complaint and, therefore, deny all such allegations.

24.     By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 24 of the Complaint and, therefore, deny all such allegations.

25.     By Kiy, Mr. Arvinger, and Mr. Weeks admit that Nike purports to own the trademark registrations listed in the table in Paragraph 25 of the Complaint.  By Kiy, Mr. Arvinger, and Mr. Weeks deny the remaining allegations set forth in Paragraph 25 of the Complaint.

## C.     NIKE'S DUNK TRADE DRESS

26.     By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 26 of the Complaint and, therefore, deny all such allegations.

27.     By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 27 of the Complaint and, therefore, deny all such allegations.

28.     By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 28 of the Complaint and, therefore, deny all such allegations.

29.     By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 29 of the Complaint and, therefore, deny all such allegations.

30.     By Kiy, Mr. Arvinger, and Mr. Weeks admit that Nike purports to own the trademark registrations listed in the table in Paragraph 30 of the Complaint.  By Kiy, Mr. Arvinger, and Mr. Weeks deny the remaining allegations set forth in Paragraph 30 of the Complaint.

### D.     NIKE MAINTAINS STRICT CONTROL OVER ITS TRADEMARKS AND NIKE'S RELATED BUSINESS REPUTATION AND GOODWILL

31.     By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 31 of the Complaint that Nike inspects and approves its shoes, and, therefore, deny all such allegations. The allegation is also vague and ambiguous.  By Kiy, Mr. Arvinger, and Mr. Weeks deny the other allegations set forth in Paragraph 31 of the Complaint.

32.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations set forth in Paragraph 32 of the  Complaint.

### E.     KIY'S UNLAWFUL ACTIVITIES

33.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations set forth in Paragraph 33 of the  Complaint.

34.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations set forth in Paragraph 34 of the  Complaint.

35.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations set forth in Paragraph 35 of the  Complaint.

36.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations set forth in Paragraph 36 of the  Complaint.

37.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations set forth in Paragraph 37 of the Complaint.  By Kiy, Mr. Arvinger, and Mr. Weeks do not sell, market, or otherwise promote products that infringe on Nike's trademark rights.

38.     By Kiy, Mr. Arvinger, and Mr. Weeks admit that its products are not Nike products and has never claimed they were Nike products.  By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations set forth in Paragraph 38 of the Complaint to the extent that they suggest any trademark infringement has occurred.

39.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations set forth in Paragraph 39 of the Complaint.

40.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations set forth in Paragraph 40 of the Complaint.

41.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations set forth in Paragraph 41 of the Complaint.

42.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations set forth in Paragraph 42 of the Complaint.

43.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations set forth in Paragraph 43 of the Complaint.

44.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations set forth in Paragraph 44 of the Complaint.

45.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations set forth in Paragraph 45 of the Complaint.  While Nike did send a purported cease and desist letter, it misstated the law and did not assert legally correct arguments; moreover there were extensive correspondence among the parties which make crystal clear By Kiy, Mr. Arvinger, and Mr. Weeks have not infringed any trademark rights and that they therefore had no intention to infringe trademarks. Nike has deliberately misrepresented the nature of prior communications that cannot plausibly support a finding of infringement or intentional infringement.  Courts decide the law, not Nike.

46.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations set forth in Paragraph 46 of the Complaint.

47.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations set forth in Paragraph 47 of the Complaint.

**E.      OMI'S UNLAWFUL ACTIVITIES**

48.     By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 48 of the Complaint which concern alleged actions by an unrelated party and, therefore, deny all such allegations. By Kiy, Mr. Arvinger, and Mr. Weeks dispute the validity and legal propriety of the alleged trademark rights asserted by Nike as such alleged rights have been asserted against By Kiy, Mr. Arvinger, and Mr. Weeks. To the extent that this paragraph implies the existence of such rights, By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations.

49.     By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 49 of the Complaint which concern alleged actions by an unrelated party and, therefore, deny all such allegations. By Kiy, Mr. Arvinger, and Mr. Weeks dispute the validity and legal propriety of the alleged trademark rights asserted by Nike as such alleged rights have been asserted against By Kiy, Mr. Arvinger, and Mr. Weeks. To the extent that this paragraph implies the existence of such rights, By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations.

50.     By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 50 of the Complaint which concern alleged actions by an unrelated party and, therefore, deny all such allegations. By Kiy, Mr. Arvinger, and Mr. Weeks dispute the validity and legal propriety of the alleged trademark rights asserted by Nike as such alleged rights have been asserted against By Kiy, Mr. Arvinger, and Mr. Weeks. To the extent that this paragraph implies the existence of such rights, By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations.

51.     By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 51 of the Complaint which concern alleged actions by an unrelated party and, therefore, deny all such allegations.  By Kiy, Mr. Arvinger, and Mr. Weeks dispute the validity and legal propriety of the alleged trademark rights asserted by Nike as such alleged rights have been asserted against By Kiy, Mr. Arvinger, and Mr. Weeks.  To the extent that this paragraph implies the existence of such rights, By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations.

52.     By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 52 of the Complaint which concern alleged actions by an unrelated party and, therefore, deny all such allegations.  By Kiy, Mr. Arvinger, and Mr. Weeks dispute the validity and legal propriety of the alleged trademark rights asserted by Nike as such alleged rights have been asserted against By Kiy, Mr. Arvinger, and Mr. Weeks.  To the extent that this paragraph implies the existence of such rights, By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations.

53.     By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 53 of the Complaint which concern alleged actions by an unrelated party and, therefore, deny all such allegations.  By Kiy, Mr. Arvinger, and Mr. Weeks dispute the validity and legal propriety of the alleged trademark rights asserted by Nike as such alleged rights have been asserted against By Kiy, Mr. Arvinger, and Mr. Weeks.  To the extent that this paragraph implies the existence of such rights, By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations.

54.     By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 54 of the Complaint which concern alleged actions by an unrelated party and, therefore, deny all such allegations.  By Kiy, Mr. Arvinger, and Mr. Weeks dispute the validity and legal propriety of the alleged trademark rights asserted by Nike as such alleged rights have been asserted against By

Kiy, Mr. Arvinger, and Mr. Weeks.  To the extent that this paragraph implies the existence of such rights, By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations.

55.     By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 55 of the Complaint which concern alleged actions by an unrelated party and, therefore, deny all such allegations.  By Kiy, Mr. Arvinger, and Mr. Weeks dispute the validity and legal propriety of the alleged trademark rights asserted by Nike as such alleged rights have been asserted against By Kiy, Mr. Arvinger, and Mr. Weeks.  To the extent that this paragraph implies the existence of such rights, By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations.

56.     By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 56 of the Complaint which concern alleged actions by an unrelated party and, therefore, deny all such allegations.  By Kiy, Mr. Arvinger, and Mr. Weeks dispute the validity and legal propriety of the alleged trademark rights asserted by Nike as such alleged rights have been asserted against By Kiy, Mr. Arvinger, and Mr. Weeks.  To the extent that this paragraph implies the existence of such rights, By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations.

57.     By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 57 of the Complaint which concern alleged actions by an unrelated party and, therefore, deny all such allegations.  By Kiy, Mr. Arvinger, and Mr. Weeks dispute the validity and legal propriety of the alleged trademark rights asserted by Nike as such alleged rights have been asserted against By Kiy, Mr. Arvinger, and Mr. Weeks.  To the extent that this paragraph implies the existence of such rights, By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations.

58.     By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 58 of the Complaint which concern alleged actions by an unrelated party and, therefore, deny all such allegations.  By Kiy, Mr. Arvinger, and Mr. Weeks dispute the validity and legal propriety of the

alleged trademark rights asserted by Nike as such alleged rights have been asserted against By Kiy, Mr. Arvinger, and Mr. Weeks. To the extent that this paragraph implies the existence of such rights, By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations.

59. By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 59 of the Complaint which concern alleged actions by an unrelated party and, therefore, deny all such allegations. By Kiy, Mr. Arvinger, and Mr. Weeks dispute the validity and legal propriety of the alleged trademark rights asserted by Nike as such alleged rights have been asserted against By Kiy, Mr. Arvinger, and Mr. Weeks. To the extent that this paragraph implies the existence of such rights, By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations.

60. By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 60 of the Complaint which concern alleged actions by an unrelated party and, therefore, deny all such allegations. By Kiy, Mr. Arvinger, and Mr. Weeks dispute the validity and legal propriety of the alleged trademark rights asserted by Nike as such alleged rights have been asserted against By Kiy, Mr. Arvinger, and Mr. Weeks. To the extent that this paragraph implies the existence of such rights, By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations.

61. By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 61 of the Complaint which concern alleged actions by an unrelated party and, therefore, deny all such allegations. By Kiy, Mr. Arvinger, and Mr. Weeks dispute the validity and legal propriety of the alleged trademark rights asserted by Nike as such alleged rights have been asserted against By Kiy, Mr. Arvinger, and Mr. Weeks. To the extent that this paragraph implies the existence of such rights, By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations.

62. By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 62 of the Complaint which concern alleged actions by an unrelated party and, therefore, deny all such

allegations.  By Kiy, Mr. Arvinger, and Mr. Weeks dispute the validity and legal propriety of the alleged trademark rights asserted by Nike as such alleged rights have been asserted against By Kiy, Mr. Arvinger, and Mr. Weeks.  To the extent that this paragraph implies the existence of such rights, By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations.

63.     By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 62 of the Complaint which concern alleged actions by an unrelated party and, therefore, deny all such allegations.  By Kiy, Mr. Arvinger, and Mr. Weeks dispute the validity and legal propriety of the alleged trademark rights asserted by Nike as such alleged rights have been asserted against By Kiy, Mr. Arvinger, and Mr. Weeks.  To the extent that this paragraph implies the existence of such rights, By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations.  By Kiy, Mr. Arvinger, and Mr. Weeks deny that Wandering Planet has made any By Kiy Products; claims to the contrary are false.

64.     By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 64 of the Complaint and, therefore, deny all such allegations.  By Kiy, Mr. Arvinger, and Mr. Weeks deny that Wandering Planet has made any By Kiy Products; claims to the contrary are false.

65.     By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 65 of the Complaint and, therefore, deny all such allegations.  By Kiy, Mr. Arvinger, and Mr. Weeks deny that Wandering Planet has made any By Kiy Products; claims to the contrary are false.

66.     By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 66 of the Complaint and, therefore, deny all such allegations.  By Kiy, Mr. Arvinger, and Mr. Weeks deny that Wandering Planet has made any By Kiy Products; claims to the contrary are false.

67.     By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 67 of the

Complaint and, therefore, deny all such allegations.  By Kiy, Mr. Arvinger, and Mr. Weeks deny that Wandering Planet has made any By Kiy Products; claims to the contrary are false.

68.     By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 68 of the Complaint and, therefore, deny all such allegations.  By Kiy, Mr. Arvinger, and Mr. Weeks deny that Wandering Planet has made any By Kiy Products; claims to the contrary are false.

69.     Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 69 of the Complaint which concern alleged actions by an unrelated party and, therefore, deny all such allegations.

70.     By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 70 of the Complaint which concern alleged actions by an unrelated party and, therefore, deny all such allegations.  By Kiy, Mr. Arvinger, and Mr. Weeks dispute the validity and legal propriety of the alleged trademark rights asserted by Nike as such alleged rights have been asserted against By Kiy, Mr. Arvinger, and Mr. Weeks.  To the extent that this paragraph implies the existence of such rights, By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations.

71.     By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 71 of the Complaint which concern alleged actions by an unrelated party and, therefore, deny all such allegations.  By Kiy, Mr. Arvinger, and Mr. Weeks dispute the validity and legal propriety of the alleged trademark rights asserted by Nike as such alleged rights have been asserted against By Kiy, Mr. Arvinger, and Mr. Weeks.  To the extent that this paragraph implies the existence of such rights, By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations.

72.     By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 72 of the Complaint which concern alleged actions by an unrelated party and, therefore, deny all such

allegations.  By Kiy, Mr. Arvinger, and Mr. Weeks dispute the validity and legal propriety of the alleged trademark rights asserted by Nike as such alleged rights have been asserted against By Kiy, Mr. Arvinger, and Mr. Weeks.  To the extent that this paragraph implies the existence of such rights, By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations.

73.     By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 73 of the Complaint which concern alleged actions by an unrelated party and, therefore, deny all such allegations.  By Kiy, Mr. Arvinger, and Mr. Weeks dispute the validity and legal propriety of the alleged trademark rights asserted by Nike as such alleged rights have been asserted against By Kiy, Mr. Arvinger, and Mr. Weeks.  To the extent that this paragraph implies the existence of such rights, By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations.

74.     By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 74 of the Complaint which concern alleged actions by an unrelated party and, therefore, deny all such allegations.  By Kiy, Mr. Arvinger, and Mr. Weeks dispute the validity and legal propriety of the alleged trademark rights asserted by Nike as such alleged rights have been asserted against By Kiy, Mr. Arvinger, and Mr. Weeks.  To the extent that this paragraph implies the existence of such rights, By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations.

75.     By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 75 of the Complaint which concern alleged actions by an unrelated party and, therefore, deny all such allegations.  By Kiy, Mr. Arvinger, and Mr. Weeks dispute the validity and legal propriety of the alleged trademark rights asserted by Nike as such alleged rights have been asserted against By Kiy, Mr. Arvinger, and Mr. Weeks.  To the extent that this paragraph implies the existence of such rights, By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations.

76.     By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 76 of the

Complaint which concern alleged actions by an unrelated party and, therefore, deny all such allegations.  By Kiy, Mr. Arvinger, and Mr. Weeks dispute the validity and legal propriety of the alleged trademark rights asserted by Nike as such alleged rights have been asserted against By Kiy, Mr. Arvinger, and Mr. Weeks.  To the extent that this paragraph implies the existence of such rights, By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations.

77.     By Kiy, Mr. Arvinger, and Mr. Weeks are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 77 of the Complaint which concern alleged actions by an unrelated party and, therefore, deny all such allegations.  By Kiy, Mr. Arvinger, and Mr. Weeks dispute the validity and legal propriety of the alleged trademark rights asserted by Nike as such alleged rights have been asserted against By Kiy, Mr. Arvinger, and Mr. Weeks.  To the extent that this paragraph implies the existence of such rights, By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations.

78.     By Kiy, Mr. Arvinger, and Mr. Weeks repeats its responses to Paragraphs 1 through 77 as though fully set forth herein.

79.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations in Paragraph 79 of the Complaint.

1.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations in Paragraph 80 of the Complaint.

80.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations in Paragraph 81 of the Complaint.

81.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations in Paragraph 82 of the Complaint.

82.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations in Paragraph 83 of the Complaint.

83.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations in Paragraph 84 of the Complaint.

84.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations in Paragraph 85 of the Complaint.

85.     By Kiy, Mr. Arvinger, and Mr. Weeks repeats its responses to Paragraphs 1 through 85 as though fully set forth herein.

86.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations in Paragraph 87 of the Complaint.

87.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations in Paragraph 88 of the Complaint.

88.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations in Paragraph 89 of the Complaint.

89.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations in Paragraph 90 of the Complaint.

90.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations in Paragraph 91 of the Complaint.

91.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations in Paragraph 92 of the Complaint.

92.     Kiy, Mr. Arvinger, and Mr. Weeks repeats its responses to Paragraphs 1 through 92 as though fully set forth herein.

93.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations in Paragraph 94 of the Complaint.

94.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations in Paragraph 95 of the Complaint.

95.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations in Paragraph 96 of the Complaint.

96.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations in Paragraph 97 of the Complaint.

97.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations in Paragraph 98 of the Complaint.

98.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations in Paragraph 99 of the Complaint.

99.     By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations in Paragraph 100 of the Complaint.

100.    By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations in Paragraph 101 of the Complaint.

101.    Kiy, Mr. Arvinger, and Mr. Weeks repeats its responses to Paragraphs 1 through 101 as though fully set forth herein.

102.    By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations in Paragraph 103 of the Complaint.

103.    By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations in Paragraph 104 of the Complaint.

104.    By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations in Paragraph 105 of the Complaint.

105.    By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations in Paragraph 106 of the Complaint.

106.    By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations in Paragraph 107 of the Complaint.

107.    By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations in Paragraph 108 of the Complaint.

108.    Kiy, Mr. Arvinger, and Mr. Weeks repeats its responses to Paragraphs 1 through 108 as though fully set forth herein.

109.    By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations in Paragraph 109 of the Complaint.

110.    By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations in Paragraph 110 of the Complaint.

111.    By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations in Paragraph 112 of the Complaint.

112.    By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations in Paragraph 113 of the Complaint.

113.    By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations in Paragraph 114 of the Complaint.

114.    By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations in Paragraph 115 of the Complaint.

115.    By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations in Paragraph 116 of the Complaint.

116.    By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations in Paragraph 117 of the Complaint.

117.    By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations in Paragraph 118 of the Complaint.

118.    By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations in Paragraph 119 of the Complaint.

119.    By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations in Paragraph 120 of the Complaint.

120.    By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations in Paragraph 121 of the Complaint.

121.    By Kiy, Mr. Arvinger, and Mr. Weeks deny the allegations in Paragraph 122 of the Complaint.

## JURY DEMAND

122.        By Kiy, Mr. Arvinger, and Mr. Weeks also request a jury trial for all triable issues.

## PRAYER FOR RELIEF

By Kiy, Mr. Arvinger, and Mr. Weeks deny that Nike is entitled to any of the relief requested in paragraphs (1) through (12) and requests the recovery of all of its reasonable attorneys' fees and costs for all counts of the Complaint upon which By Kiy, Mr. Arvinger, and Mr. Weeks is the prevailing party.

## AFFIRMATIVE DEFENSES

As separate and distinct affirmative defenses to Nike's claims for relief, By Kiy, Mr. Arvinger, and Mr. Weeks alleges the following without admission that such allegations are affirmative defenses on which By Kiy, Mr. Arvinger, and Mr. Weeks shall bear the burden of proof.

## FIRST AFFIRMATIVE DEFENSE(
## (Laches)

Nike's claims are barred, precluded, and/or limited by the doctrine of laches.  Nike has unreasonably delayed in bringing its claims.  By Kiy, Mr. Arvinger, and Mr. Weeks are informed and believe and on that basis allege that Nike has known or should have known of their alleged activities since at least August 2020 but did not assert its rights until the filing of this on November 30, 2022.  Such unreasonable delay and lack of diligence by Nike has caused By Kiy, Mr. Arvinger, and Mr. Weeks substantial prejudice.

## SECOND AFFIRMATIVE DEFENSE

### (Acquiescence)

Nike's claims are barred, precluded, and/or limited by the doctrine of acquiescence.  By Kiy, Mr. Arvinger, and Mr. Weeks are informed and believe and on that basis allege that Nike actively represented or assured By Kiy  that Nike would not assert its purported trademark rights. Nike's delay between the active representation and the filing of this lawsuit was not excusable and has caused By Kiy, Mr. Arvinger, and Mr. Weeks substantial prejudice.

## THIRD AFFIRMATIVE DEFENSE

### (Waiver)

Nike's claims are barred, precluded, and/or limited by the doctrine of waiver.  By Kiy, Mr. Arvinger, and Mr. Weeks are informed and believe and on that basis allege that Nike's collaborator and apparent agent, Nike intentionally and unequivocally relinquished its purported trademark rights.  Alternatively, Nike's acts were so inconsistent with an intent to enforce its trademark rights that it induced By Kiy, Mr. Arvinger, and Mr. Weeks into the reasonable belief that Nike's trademark rights had been relinquished.

## FOURTH AFFIRMATIVE DEFENSE

### (Estoppel)

Nike's claims are barred, precluded, and/or limited by the doctrine of equitable estoppel. By Kiy, Mr. Arvinger, and Mr. Weeks are informed and believe and on that basis allege that Nike has known or should have known of their alleged activities since at least August 2020 but did not assert its rights until the filing of this on November 30, 2022.  Nike's inaction in timely communicating concern to By Kiy regarding Nike's purported trademarks led By Kiy, Mr. Arvinger, and Mr. Weeks to reasonably believe Nike did not intend to enforce such trademark rights.  Accordingly, By Kiy, Mr. Arvinger, and Mr. Weeks did not know and had no reason to know that Nike actually objected to By Kiy, Mr. Arvinger, and Mr. Weeks's purported conduct. As a result, By Kiy, Mr. Arvinger, and Mr. Weeks has been prejudiced.

### FIFTH AFFIRMATIVE DEFENSE

#### (Utilitarian Functionality as to Dunk and Jordan Shoes)

Nike's claims are barred, precluded, and/or limited by the doctrine of utilitarian functionality.  One or more of Nike's alleged trade dress elements in the Dunk shoe, including such trade dress elements purportedly covered by U.S. Trademark Reg. Nos. 3,711,3056,368,694; and 6,368,691, including without limitation (1) the stitching on the exterior of the shoe; (2) the material panels that form the exterior of the shoe; (3) the panel on top of the shoe that encompasses the eyelets for shoe laces; (4) the vertical ridge pattern on the sides of the sole of the shoe; and (5) the relative position of these elements, has utilitarian functionality because such trade dress elements are essential to the use and purpose of the shoe and/or affect the cost and/or quality and/or performance, durability, and/or safety of the shoe.  The material panels that form the exterior of the shoe are specifically designed in that shape in that location to improve the comfort and ability of an athlete to move his toes while playing basketball. These lines in the trademark are for a utilitarian function and necessary and commonplace for movement in all athletic shoes.

### SIXTH AFFIRMATIVE DEFENSE

#### (Utilitarian Functionality as to Dunk and Jordan Tread/Sole)

Nike's claims are barred, precluded, and/or limited by the doctrine of utilitarian functionality.  One or more of Nike's alleged trade dress elements in the Dunk tread/sole, including such trade dress elements purportedly covered by U.S. Trademark Reg. No. 3,721,064 such as the tread on the sole of the shoe has utilitarian functionality because such trade dress elements are essential to the use and purpose of the sole and/or affect the cost and/or quality and/or performance, durability, and/or safety of the sole.

## SEVENTH AFFIRMATIVE DEFENSE

### (Naked Licensing)

Nike's claims are barred, precluded, and/or limited by the doctrine of naked licensing. Upon information and belief, Nike has permitted rampant, unpoliced use by third parties of its purported trade dress, including the Dunk and Jordan trade dresses.  Nike's failure to police such third-party usage and/or control the quality of such third-party use has caused the purported trade dress to cease functioning as a symbol of quality and a controlled source.  Nike's failure to police and failure to exercise adequate quality control has resulted in abandonment of any rights in the purported trade dress.

## EIGHTH AFFIRMATIVE DEFENSE

### (Public Domain)

Nike's claims are barred, in whole or part by the federal policy found in Article I, § 8, cl. 8 of the Constitution as interpreted in Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234, 237–38, 84 S. Ct. 779, 782, 11 L. Ed. 2d 669 (1964) ("[W]hen an article is unprotected by a patent or a copyright, state law may not forbid others to copy that article.  To forbid copying would interfere with the federal policy, found in [Article I, Section 8, Clause 8], of the Constitution and in the implementing federal statutes, of allowing free access to copy whatever the federal patent and copyright laws leave in the public domain.  Here Day-Brite's fixture has been held not to be entitled to a design or mechanical patent. Under the federal patent laws it is, therefore, in the public domain and can be copied in every detail by whoever pleases.  It is true that the trial court found that the configuration of Day-Brite's fixture identified Day-Brite to the trade because the arrangement of the ribbing had, like a trademark, acquired a 'secondary meaning' by which that particular design was associated with Day-Brite.  But if the design is not entitled to a design patent or other federal statutory protection, then it can be copied at will.")

## NINTH AFFIRMATIVE DEFENSE

### (Patent Act Bar)

Plaintiff's claims are barred, in whole or in part, by the Patent Act of 1952, as amended, or federal common law as interpreted in *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 165 (1989) ("For almost 100 years it has been well established that in the case of an expired patent, the federal patent laws do create a federal right to "copy and to use." *Sears* and *Compco* extended that rule to potentially patentable ideas which are fully exposed to the public.")

## TENTH AFFIRMATIVE DEFENSE

### (Trademark Claims Based on Design of Goods)

The design of the shoes depicted in the Trade Dress Registrations affects the quality of shoes that embody that design, and accordingly is ineligible for protection as a "trademark" under *TrajFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 33 (2001).

## ELEVENTH AFFIRMATIVE DEFENSE

### (Trademark Claims Based on Features of Goods)

The features of the shoes depicted in the Trade Dress Registrations affects the quality of shoes that embody those features, and accordingly is ineligible for protection as a "trademark" under *TrajFix Devices, Ine. v. Marketing Displays, Inc.*, 532 U.S. 23, 33 (2001).

## TWELFTH AFFIRMATIVE DEFENSE

### (Fair and Descriptive Use)

Nike's claims are barred, in whole or in part, by the doctrines of fair use and descriptive use.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Genericity)

Nike's claims are barred, in whole or in part, on the basis that the trade dresses at issue are generic.

66

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

Nike's claims are barred, in whole or in part, by the doctrine of unclean hands.


## FIFTEENTH AFFIRMATIVE DEFENSE

### (First Amendment)

Nike's claims are barred, in whole or in part, by the First Amendment to the United States Constitution.


## REQUEST FOR RELIEF

WHEREFORE, By Kiy, Mr. Arvinger, and Mr. Weeks prays for judgment as follows:


A.      That the Court deny Nike's requests for relief and find in favor of By Kiy, Mr. Arvinger, and Mr. Weeks on all counts;

B.      That Nike recovers nothing and its Complaint is dismissed with prejudice;

C.      That By Kiy, Mr. Arvinger, and Mr. Weeks are awarded their costs, expenses, and reasonable attorneys' fees in defending against Nike's claims in this action; and

D.      That By Kiy, Mr. Arvinger, and Mr. Weeks are awarded such other relief that the

Court deems just and proper.

DATED: February 13, 2023              JOHN S. DURRANT
                                      THE DURRANT LAW FIRM, APC


                                      By: *John S. Durrant* _____
                                            John S. Durrant (*admitted pro hac vice*)
                                            Attorney for Defendant and Counterclaimant
                                            *By Kiy, LLC, and Defendants Nickwon*
                                            *Arvinger, and David Weeks*

DATED: February 13, 2023              ZAKARI A. KURTZ, ESQ.
                                      SNEAKER LAW FIRM PLLC
                                      dba SNEAKER & STREETWEAR LEGAL SERVICES


                                      By: *Zakari A. Kurtz* _____
                                            Zakari A. Kurtz (NY Attorney No. 5242946)
                                            Attorney for Defendant and Counterclaimant
                                            *By Kiy, LLC, and Defendants Nickwon*
                                            *Arvinger, and David Weeks*

## <u>DEMAND FOR JURY TRIAL</u>

Defendants/Counterclaimant demand a trial by jury of all claims,counterclaims, and defenses so triable.

DATED: February 13, 2023         JOHN S. DURRANT
                                    THE DURRANT LAW FIRM, APC


                                      By:  *John S. Durrant* _____
                                          John S. Durrant (*admitted pro hac vice*)
                                          Attorney for Defendant and Counterclaimant
                                          *By Kiy, LLC, and Defendants Nickwon*
                                          *Arvinger, and David Weeks*

DATED: February 13, 2023         ZAKARI A. KURTZ, ESQ.
                                      SNEAKER LAW FIRM PLLC
                                      dba SNEAKER & STREETWEAR LEGAL SERVICES


                                      By:  *Zakari A. Kurtz* _____
                                          Zakari A. Kurtz (NY Attorney No. 5242946)
                                          Attorney for Defendant and Counterclaimant
                                          *By Kiy, LLC, and Defendants Nickwon*
                                          *Arvinger, and David Weeks*