**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NIKE, INC.,<br><br>                    Plaintiff<br><br>v.<br><br>RELOADED MERCH LLC,<br>BILL OMAR CARRASQUILLO, and<br>XIAMEN WANDERING PLANET<br>IMPORT AND EXPORT CO., LTD.,<br><br>                    Defendants. | Civil Action No. 1:22-cv-10176-VM |

**DEFENDANTS RELOADED MERCH LLC AND BILL OMAR CARRASQUILLO'S**
**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
<u>**PLAINTIFF'S COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)**</u>

Robert R. Axenfeld
Scott L. Baker
Daniel P. Wotherspoon
**AXENFELD LAW GROUP, LLC**
2001 Market St., Suite 2500
Philadelphia, Pennsylvania 19103
(215) 422-3000

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................. 1

II. STATEMENT OF FACTS .................................................................................... 3

III. LEGAL STANDARDS ......................................................................................... 5

    A. Standards Under Fed. R. Civ. P. 12(b)(6) ....................................................... 5

    B. Standards for Trade Dress Claims .................................................................. 6

IV. ARGUMENT ........................................................................................................ 7

    A. Nike's mere reliance on trademark registrations attached to its complaint fails to satisfy Nike's pleading requirements ……………….………… 9

    B. The "Description of Mark" contained in each of Nike's trademark Registrations, standing alone, does not describe why Nike's alleged trade dress is distinctive and how its distinctive ………..……………………..12

V. CONCLUSION.................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Cases**

*Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619, 638 (6th Cir. 2002) .................................................................................................................. 12

*Allen v. WestPoint-Pepperell Inc.*, 945 F.3d 40 (2d Cir. 1991) ....................................... 6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................ 5

*Bell Atl. Corp. v. Twombly*, 550 U.S.544 (2007) ............................................................ 5

*Burnette v. Carothers*, 192 F.3d 52 (2d Cir. 1999) ......................................................... 5

*Caraway Home, Inc. v. Pattern Brands, Inc.*, No. 20 CIV. 10469, 2021 WL 1226156 (S.D.N.Y. Apr. 1, 2021) .............................................................................................. 2, 7

*Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 348 F. Supp. 2d 217 (S.D.N.Y. 2004) ………………………………………………………………………………………………10, 11

*Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, No. 01 CIV. 11295, 2003 WL 21056809 (S.D.N.Y. May 8, 2003) ................................................................................ 10

*E. Remy Martin & Co. v. Sire Spirits LLC*, No. 21 CIV. 6838 (AKH), 2022 WL 94882 (S.D.N.Y. Jan. 10, 2022) ................................................................. 6, 8, 9, 10, 11, 14

*ESPN, Inc. v. Quiksilver, Inc.*, 586 F. Supp. 2d 219, 230 (S.D.N.Y. 2008) ………………7

*Heller Inc. v. Design Within Reach, Inc.*, Civ. No. 09-1909, 2009 WL 2486054 (S.D.N.Y. Aug. 14, 2009) .......................................................................................... 2, 8, 10, 11

*Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373 (2d Cir. 1997) ............ 1

*Le Book Publ'g, Inc. v. Black Book Photography*, 418 F. Supp. 2d 305, 308 (S.D.N.Y. 2005) ………………………………………………………………………………………….6

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.* 454 F.3d 108 (2d Cir. 2006) ................ 6

*Malaco Leaf, AB v. Promotion in Motion, Inc.*, 287 F. Supp. 2d 355, 363 (S.D.N.Y. 2003) ........................................................................................................................... 12

*Mana Prod., Inc. v. Columbia Cosms. Mfg., Inc.*, 65 F.3d 1063, 1070 (2d Cir. 1995) ... 12

*Nat'l Hockey League v. Hockey Cup LLC*, No. 18-cv-6597, 2019 WL 130576 (S.D.N.Y. Jan. 8, 2019) ………………………………………………………………………………….11

*Nat'l Lighting Co., Inc. v. Bridge Metal Indus., LLC*, 601 F. Supp. 2d 556 (S.D.N.Y. 2009) ................................................................................................................ 7, 13

*Sara Designs, Inc. v. A Classic Time Watch Co. Inc.*, 234 F. Supp. 3d 548 (S.D.N.Y. 2017) ........................................................................................................................ 9

*Sherwood 48 Assocs. v. Sony Corp. of Am.,* 76 Fed. Appx. 389 (2d Cir. 2003).......... 6, 7

*Shevy Custom Wigs, Inc. v. Aggie Wigs,* No. 06 CV 1657 JG, 2006 WL 3335008 ....... 13

*Sports Traveler, Inc. v. Advance Magazine Publishers, Inc.*, 25 F. Supp. 2d 154 (S.D.N.Y 2008) ......................................................................................................... 7

*Yurman Design Inc. v. PAJ, Inc.,* 262 F.3d 101, 114-115 (2d Cir. 2001)..................... 2, 6

*Yurman Design Inc. v. Chaindom Enterprises, Inc.*, No. 99 CIV. 9307 (JFK), 2000 WL 897141, at *4 (S.D.N.Y. July 5, 2000) …………………………………………………14

I. **INTRODUCTION**

Defendants Reloaded Merch LLC ("Reloaded") and Bill Omar Carrasquillo ("Carrasquillo") (collectively, hereinafter "Reloaded/Carrasquillo") respectfully ask the Court to dismiss Plaintiff Nike Inc.'s ("Nike's") Complaint in accordance with Fed. R. Civ. P. 12(b)(6) for failure to adequately articulate which elements of Nike's various styles of footwear — design configurations of its products — are distinctive and why. To plead a claim of trade dress infringement, a plaintiff must "specify both 'which features are distinctive' and 'how they are distinctive.'" *Tracey Tooker & TT Ltd., Inc. v. Whitworth*, 212 F.Supp.3d 429, 434 (S.D.N.Y. 2016) (citations omitted). *See also Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997).

Nike admits that the only description of Nike's trade dress asserted against Reloaded/Carrasquillo is exclusively contained in four trademark registrations attached as exhibits to Nike's complaint. In other words, Nike's 123-paragraph Complaint fails to describe which features of Nike's product designs for its shoes are "distinctive" and "how these features are distinctive." For this reason alone, Nike's complaint should be dismissed for failure to sufficiently plead under Rule 12(b)(6).

Instead of describing the distinctive features of its product designs, Nike merely incorporates by reference the trade dress registrations attached as exhibits to its complaint, leaving the Court and Reloaded/Carrasquillo to guess which aspects of Nike's trade dress registrations are distinctive, and how they are distinctive.

Nike argues that it is relieved of its obligation to specify which features of its product designs are distinctive and how they are distinctive in Nike's complaint,

1

because Nike registered its trade dress registrations with the United States Patent and Trademark Office ("USPTO").

However, the Second Circuit has never issued an opinion that relieves a plaintiff of its duty to plead which elements of a product design are distinctive and why. Whether trade dress is registered or unregistered has no bearing on whether a plaintiff has properly pleaded a precise expression of the character and scope of its trade dress. "A registration is only 'prima facie evidence of the validity of the registered mark,' not the clarity of its scope." *Heller Inc. v. Design Within Reach, Inc.*, No. 09CIV1909(JGK), 2009 WL 2486054, at *6 (S.D.N.Y. Aug. 14, 2009) (quoting 15 U.S.C. § 1115(a)).

Further, Nike's trade dress descriptions are so vague and broad that they read-on most shoes, such as reciting shoe-lace eyelets and panels on shoes. The diagrams and descriptions included in Nike's registrations are vague and overbroad, because they read-on and potentially cover a wide array of competing shoes, and thus "pose an anti-competitive risk." *See Caraway Home, Inc. v. Pattern Brands, Inc.*, No. 20 CIV. 10469, 2021 WL 1226156, at *7 (S.D.N.Y. Apr. 1, 2021) (citation omitted). Courts must exercise "particular caution" in considering trade dress infringement claims related to product design because they "raise a potent risk that relief will impermissibly afford a level of protection that would hamper efforts to market competitive goods." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 1116 (2d Cir. 2001) (citations omitted).

Moreover, in this case, Nike waited approximately 35 years to apply to register two of its alleged trade dresses with the USPTO. Many competitors — such as Reloaded — believed that these unpatented and unregistered features were in the public domain. Allowing Nike to ensnare competitors who adopted certain features listed

in Nike's trademark registrations before Nike applied to register these features with the USPTO is why the Second Circuit requires a plaintiff to clearly articulate which features of trade dress directed to a product design are distinctive and how they are distinctive.

Furthermore, Nike's trade dress registrations are not patents. Trade dress registrations are not examined for novelty nor non-obviousness by a patent examiner. Instead, a trademark examiner merely compared Nike's trade dress applications to a limited set of registered trademarks for likelihood of confusion. Consequently, a USPTO trademark examiner did not vet Nike's trademark applications, which matured into trade dress registrations in this case, to any unregistered-trademark features adopted by Nike's competitors over the past-three decades. Undoubtedly, many of these unregistered-trademark features have co-existed with Nike's alleged trade dress over the last 35 years (recently registered in 2021), or even predate Nike's alleged first use dates claimed by Nike in its trademark registrations.

Because Nike has failed to sufficiently articulate what trade dress features are distinctive and why in its Complaint, Nike's complaint should be dismissed in its entirety under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

## II.   STATEMENT OF FACTS

Reloaded is a Pennsylvania limited liability company that sells footwear and other apparel. Carrasquillo, is an individual residing in New Jersey who helps design Reloaded's distinctive footwear and apparel, which is popular among some of Carrasquillo's social-media followers. Carrasquillo has been designing footwear since at least as early as 2019, and is not an employee nor a member of Reloaded.

In its Complaint, Nike asserts six counts against Reloaded/Carrasquillo, all of which relate only to Nike's alleged trade dress and do not implicate any of Nike's alleged word marks or logos. Specifically, Nike alleges that Reloaded's footwear infringes four trademarks registered with the USPTO: Reg. Nos. 6,368,694 and 6,368,691 registered on June 1, 2021; Reg. No. 3,711,305 registered on September 1, 2009; and Reg. No. 3,721,065 registered on December 8, 2009 (collectively "Nike's trademark registrations"). *See* Compl. at ¶¶ 25, 30.

In each of Nike's trademark registrations attached to Nike's complaint, Nike claims first use of its marks dating back to the mid-1980s. *See* Compl. Exs. 2-5. However, Nike waited approximately 35 years to file to apply to register Reg. Nos. 6,368,694 and 6,368,691, after competitors like Reloaded designed and sold shoes containing similar functional features that Reloaded/Carrasquillo reasonably believed were functional elements and/or were part of the public domain. Now, following the registration of Reg. Nos. 6,368,694 and 6,368,691 in the year 2021, Nike seeks to hold an upstart competitor, Reloaded, liable for infringing upon features that Nike never applied to register until after Reloaded adopted differently designed functional features in Reloaded's shoes.

Moreover, Nike has brought similar lawsuits against sneaker competitors in recent years, including filing a complaint with virtually identical allegations against USAPE LLC earlier this year. USAPE LLC has been selling sneakers at issue in that lawsuit since 2005 and has also moved to dismiss Nike's lawsuit for Nike's failure to

4

properly articulate its claimed trade dress. *See Nike Inc. v. USAPE LLC*, No. 1:23-cv-00660 (S.D.N.Y. 2023).

Nowhere in its 123-paragraph Complaint against Reloaded/Carrasquillo does Nike articulate what is distinctive about the design elements that comprise Nike's trademark registrations, and how those elements are distinctive. Instead, Nike merely attaches Nike's registered trademarks its complaint as exhibits. *See* Compl. at ¶¶ 25, 30; Exs. 2-5.

### III.   LEGAL STANDARDS

#### A.   Standards Under Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) mandates dismissal of a complaint that "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint is fatally flawed if it fails to give the defendant notice of a legally cognizable claim and grounds on which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S.544, 555 (2007). Although a court must "[accept] the allegations contained in the complaint as true and [draw] all inferences in favor of the nonmoving party," *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999), a complaint that offers mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). In addition to the well-pleaded "facts stated on the face of the complaint," on a motion to dismiss the court may consider "documents appended to the complaint or incorporated in the complaint

by reference," and "matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell Inc.*, 945 F.3d 40, 44 (2d Cir. 1991) (citation omitted).

      B.      <u>Standards for Trade Dress Claims</u>

A product's trade dress is defined as "the total image of a good as defined by its overall composition and design, including size, shape, color, texture, and graphics." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.* 454 F.3d 108, 115 (2d Cir. 2006). Courts exercise "particular caution" in extending trade dress protection to product designs, given the risk that affording such protection "would hamper efforts to market competitive goods" and "create a monopoly in the goods themselves." *Yurman,* 262 F.3d 101 at 114-115.

Federal law provides that a plaintiff who alleges infringement of trade dress in a product design must: (1) "offer a precise expression of the character and scope of the claimed trade dress"; (2) allege that the "claimed trade dress has secondary meaning"; (3) allege "a likelihood of confusion between the plaintiff's good and the defendants'"; and (4) allege that "the claimed trade dress is non-functional." *Sherwood 48 Assocs. v. Sony Corp. of Am.,* 76 Fed. Appx. 389, 391 (2d Cir. 2003). The requirement to "carefully define[]" the alleged trade dress is a "threshold matter," which must be alleged in order to prevail on any trade dress-related claim.[1] *See E. Remy Martin & Co. v. Sire Spirits LLC*, No. 21 CIV. 6838 (AKH), 2022 WL 94882, at *10 (S.D.N.Y. Jan. 10, 2022) (dismissing state and federal trade dress infringement, false designation of origin,

---

[1] "Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical." *Le Book Publ'g, Inc. v. Black Book Photography*, 418 F. Supp. 2d 305, 308 (S.D.N.Y. 2005).

6

common law infringement, unfair competition, and trade dress dilution claims for failure to specifically allege the elements comprising the trade dress). Additionally, in all significant respects, trade dress protection is coextensive under New York state common law and federal law. *See Sports Traveler, Inc. v. Advance Magazine Publishers, Inc.*, 25 F. Supp. 2d 154, 166 (S.D.N.Y 2008) ("The analysis for trade dress infringement is the same under both the Lanham Act and New York State common law.").

## IV. ARGUMENT

Nike has not brought this suit against Reloaded/Carrasquillo for infringement or dilution of its word mark nor any of its logos. Instead, Nike bases Counts I-VI on the alleged trade dress listed in Nike's trademark registrations. However, Nike's complaint lacks a "precise expression of the character and scope" of its claimed trade dress, which is fatal to its claims. *See Sherwood 48 Assocs.*, 76 Fed. Appx. at 391. Therefore, all of Nike's state, common law, and federal trade dress-related claims against Reloaded/Carrasquillo (Counts I through VI) should be dismissed.[2]

It is well-settled that a plaintiff must articulate "the specific elements which comprise its trade dress" at the outset of the case. *See, e.g.*, *Nat'l Lighting Co., Inc. v. Bridge Metal Indus., LLC*, 601 F. Supp. 2d 556 (S.D.N.Y. 2009) (granting motion to dismiss for failure to precisely define claimed trade dress); *Caraway Home*, 2021 WL

---

[2] Nike's state and common law claims (Counts IV through VI) are analyzed under the same framework as those of the Lanham Act (Counts I through III). Thus, if Nike fails to state a claim under the Lanham Act, which Nike has failed to do, then Nike's state and common law claims must also fail. *See ESPN, Inc. v. Quiksilver, Inc.*, 586 F. Supp. 2d 219, 230 (S.D.N.Y. 2008) (indicating that the elements to state a claim under New York common law mirror those required to state a claim under the Lanham Act).

1226156, at *8 (same). The discrete elements which make up the trade dress must be separated out and clearly identified even if a plaintiff owns federal registrations for its claimed trade dress. *E. Remy Martin*, 2022 WL 94882 at *11 (finding plaintiff's reliance on a series of images, the registered marks, and a general description of the overall look insufficient).

Nike's failure to articulate which elements of its claimed trade dress are distinctive and how they are distinctive in its Complaint is a fatal flaw. Nike's attempt to rely on its federal trademark registrations is insufficient because registrations are only *prima facie* evidence of the validity of the registered mark and not the clarity of its scope. *Heller*, 2009 WL 2486054, at *6. Therefore, Nike cannot rely on its federal trademark registrations to excuse its failure to plead a precise expression of the character and scope of its trade dress.

In addition, Nike's delay in applying for registration of two of its trademark registrations for approximately 35 years raises serious questions about whether its claimed trade dress is actually distinctive and entitled to protection. The fact that Nike seeks to hold Reloaded/Carrasquillo liable for infringing features that Nike only applied to register after Reloaded designed and sold shoes containing similar functional features is troubling and supports the conclusion that Nike's claimed trade dress is vague and overbroad.

For these reasons, all of Nike's trade dress-related claims against Reloaded/Carrasquillo should be dismissed for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6).

### A. *Nike's mere reliance on trademark registrations attached to its complaint fails to satisfy Nike's pleading requirements*.

The allegations in Nike's complaint fail to meet the "precise expression" that courts in this Circuit require a plaintiff to articulate when claiming trade dress infringement. Specifically, Nike does not identify the specific elements of its trademark registrations which Reloaded/Carrasquillo is allegedly infringing nor does Nike explain which of Nike's "trade design elements are distinctive and how they are distinctive." *Sara Designs*, 234 F. Supp. 3d at 555. Consequently, each of Nike's Counts asserted against Reloaded/Carrasquillo is deficient.

While Nike argues that its trademark registrations alone are sufficient to satisfy its pleading burden, the short and vague descriptions contained in the trademark registrations do not describe the alleged trade dress with enough particularity to state a claim. The descriptions merely describe the design of common, generic, and widely used elements of most shoes, which are unprotectable. Moreover, Nike's repeated use of the vague term "design" does not sufficiently describe the distinctive elements of its shoes, or why these elements are distinctive, making Nike's complaint legally insufficient.

In contrast, cases such as *E. Remy Martin & Co. v. Sire Spirits LLC* demonstrate that a detailed and specific articulation of a product's distinctive elements is necessary to state a claim for trade dress infringement. Nike has failed to establish this most basic element of its claims, and therefore, all of its state, common law, and federal trade dress-related claims against Reloaded/Carrasquillo should be dismissed.

Nike's complaint relies solely on the fact that its alleged trade dress has been registered with the USPTO to sustain Nike's pleading burden to precisely identify its

trade dress. Simply attaching trademark registrations, however, does not meet the pleading requirements in this court. *See, e.g.*, *E. Remy Martin*, 2022 WL 94882 at *11 (finding plaintiff's reliance on a series of images, the registered marks, and a general description of the overall look insufficient); *Heller*, 2009 WL 2486054, at *6-7 (granting motion to dismiss plaintiff's trade dress-related claims where plaintiff failed to allege the specific distinct aspects of its trade dress that would make the trade dress for its chair protectable and instead included an image of the chair that was included in plaintiff's trademark registration for the trade dress). *Cf. Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 348 F. Supp. 2d 217, 223 (S.D.N.Y. 2004) (articulating the specific elements that constitute its distinct trade dress, despite having a registered mark); *see also Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, No. 01 CIV. 11295, 2003 WL 21056809, at *4 (S.D.N.Y. May 8, 2003) ("The legal principles governing the protection of unregistered trade dress are very similar to the principles governing other registered and unregistered marks.").

Indeed, in *Heller*, the court expressly rejected the plaintiff's argument "that because the plaintiff has a trademark registration, it need not articulate the specific elements of the trade dress that should be protected" and found that "[r]egistration, particularly a vague registration, does not affect the plaintiff's obligation to specify the elements of its allegedly distinctive dress." 2009 WL 2486054, at *6.

Nike argued in its letter briefing that the cases Reloaded/Carrasquillo have cited to this Court are inapposite because they involve *unregistered* rather than *registered* trade dress. However, whether trade dress is registered or unregistered has no bearing on a plaintiff's obligation to properly plead a precise expression of the character and

scope of its trade dress. "A registration is only 'prima facie evidence of the **validity** of the registered mark,' **not the clarity of its scope**." *Heller*, 2009 WL 2486054, at *6 (quoting 15 U.S.C. § 1115(a) (emphasis added)).

Moreover, Reloaded/Carrasquillo have cited two cases to this Court that involve registered trade dress and which support their position in this Motion. *See Heller*, 2009 WL 2486054, at *6-7; *E. Remy Martin*, 2022 WL 94882, at *10.

Conversely, Nike cites no case in any of its letter briefing holding that a plaintiff is relieved from pleading a precise expression of its distinctive trade dress, or that a plaintiff's burden to plead is lessened, because the trade dress is registered.

In fact, the only case that Nike cites in its letter briefing, *Nat'l Hockey League v. Hockey Cup LLC*, No. 18-cv-6597, 2019 WL 130576 (S.D.N.Y. Jan. 8, 2019), is unavailing and distinguishable from this case. In *Nat'l Hockey League*, the defendant devoted only three sentences of its 32-page motion to dismiss to its argument that plaintiff failed to allege a precise expression of the trade dress. Similarly, the court gave the defendant's argument a cursory analysis, concluding that the plaintiff met its pleading burden by "list[ing] its registration for its Stanley Cup trade dress in the complaint." *Id.* Not only is this statement in the opinion unsupported by any reasoning, but it flies in the face of the majority of Second Circuit case law, which supports Reloaded/Carrasquillo's contention that Nike's description of its trade dress is not sufficiently pled. *See, e.g., Heller*, 2009 WL 2486054, at *6 ("Registration, particularly a vague registration, does not affect the plaintiff's obligation to specify the elements of its allegedly distinctive dress."); *Cardinal Motors, Inc. v. H&H Sports Prot. USA, Inc.*, No.1:20-CV-07899-PAC, 2021 WL 1758881, at *4 (S.D.N.Y. May 4, 2021) (same); *Cf.*

11

*Cartier*, 348 F. Supp. at 223 (articulating the specific elements that constitute its distinct trade dress, despite having a registered mark).

### B. The "Description of Mark" contained in each of Nike's trademark Registrations, standing alone, does not describe why Nike's alleged trade dress is distinctive and how its distinctive.

Nike has argued that its trademark registrations attached to Nike's complaint are enough by themselves to satisfy Nike's pleading burden because those registrations contain a short description of the trade dress. This argument is unavailing.

The short and vague descriptions in the "Description of Mark" section of Nike's trademark registrations do not describe the alleged trade dress with enough particularity to state a claim. Rather, the descriptions in Nike's registrations describe the "design" of common, generic, and widely used elements of most shoes, such as the "*material panels that form the exterior body of the shoe*," "*the panel on top of the shoe that includes the eyelets*," and "*the tread on the sole a shoe* [sic]." Compl. at Exs. 2-5.

Generic elements of a product that are commonly used throughout an industry, such as these, are unprotectable. *See, e.g.*, *Malaco Leaf, AB v. Promotion in Motion, Inc.*, 287 F. Supp. 2d 355, 363 (S.D.N.Y. 2003) (trade dress that consists of the shape of a product that conforms to a well-established industry custom is generic and hence unprotected); *Mana Prod., Inc. v. Columbia Cosms. Mfg., Inc.*, 65 F.3d 1063, 1070 (2d Cir. 1995) (a black rectangular-shaped compact design is generic, because these qualities are "common characteristics of the entire genre of makeup compacts"); *Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619, 638 (6th Cir. 2002) (finding generic product configurations unprotectable because "no designer should have a monopoly on designs regarded by the public as the basic form

of a particular item").

Nike's repeated use of the vague term "design" does nothing to describe what elements of its shoes Nike claims are distinctive and how these elements are distinctive. Such vague and overbroad statements do not describe the alleged trade dress with enough particularity to state a claim for trade dress infringement or dilution and courts routinely dismiss such faulty trade dress claims. For example, in *Nat'l Lighting Co.*, the court dismissed the plaintiff's trade dress claims because the description of the trade dress in the complaint was merely a "laundry list of elements that constitute a [product's] design rather than a description of which of plaintiff's trade dress design elements are distinctive and how they are distinctive." 601 F.Supp.2d at 562. It is difficult to imagine a more vague and less descriptive "laundry list of elements" than the references to "stitching on the exterior of the shoe," "design of the tread on the sole a shoe [sic]," "design of a material panel on the heel," and "the relative position of these elements to each other" contained in Nike's complaint.

*Shevy Custom Wigs, Inc. v. Aggie Wigs* is similarly instructive. In that case, the plaintiff brought trade dress infringement claims against defendant related to its line of wigs. No. 06 CV 1657 JG, 2006 WL 3335008, at *4. The plaintiff defined its trade dress in the complaint in terms very similar to those used by Nike in the instant case:

> [T]he specific lace band at the hairline of the wig or fall; the particular multi-directional part, including the specific size and shape of the multi-directional part; the wefted stretch net; the layered style; the distribution of hair and the weight of the piece; and the size and shape of the net.

*Id*. at *5. The court found this description to be "legally insufficient." *Id.* In dismissing the complaint for failure to state a claim, the court found that simply reciting a list of features comprising the alleged trade dress does not satisfy a plaintiff's pleading burden where

13

the complaint fails to identify how any of those features were distinctive. *Id.* (dismissing state and federal trade dress infringement claims).

In contrast, the court in *E. Remy Martin*, found that plaintiff's articulation of its trade dress, a description plainly more detailed than Nike's, was sufficient to state a claim. In that case, plaintiff described its bottles as:

> "(a) a toroidal shape; (b) a flat, recessed center; and (c) ridging on the front and back surfaces surrounding the recessed center of the bottle and encircling the outward edges . . . creat[ing] a scalloped appearance when the bottle is viewed from the front or back."

No. 21 civ. 6838, ECF No. 81. Rather than simply referencing the "design" of different elements of most bottles, the plaintiff in *E. Remy* described the shape of these elements and the interplay between them, as well as how the elements appear when viewed from different angles. A defendant or juror reading the *E. Remy* product description is able to discern the specific distinctive elements of the bottle, which is bolstered by the numerous diagrams and pictures, from many different angles, included in the plaintiff's amended complaint. *Id.*, ECF No. 68.

To survive a motion to dismiss, a complaint must "contain allegations concerning each of the material elements necessary to sustain recovery under a viable legal theory." *See Yurman Design Inc. v. Chaindom Enterprises, Inc.*, No. 99 CIV. 9307 (JFK), 2000 WL 897141, at *4 (S.D.N.Y. July 5, 2000). In the instant case, Nike has failed to establish the most basic element of its claims; a precise articulation of features its distinctive trade dress and how those features are distinctive. This failure is fatal to

each of Nike's claims against Reloaded/Carrasquillo and thus Counts I-VI should be dismissed.

## V. CONCLUSION

Reloaded/Carrasquillo respectfully requests that this Court dismiss Nike's complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6). The Complaint fails to meet the necessary pleading standards for a trade dress claim, as it does not sufficiently articulate the specific elements and distinctive characteristics of Nike's alleged trade dress. Nike's reliance on its trademark registrations and vague descriptions of generic elements of shoes is insufficient to sustain its claims against Reloaded/Carrasquillo. Additionally, the cases cited by Reloaded/Carrasquillo demonstrate that a plaintiff's obligation to specify the elements of its allegedly distinctive trade dress is not obviated or lessened by the fact that the trade dress is registered with the USPTO. Therefore, the Court should dismiss all of Nike's state, common law, and federal trade dress-related claims against Reloaded/Carrasquillo (Counts I through VI).

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: March 27, 2023 | s/ Robert R. Axenfeld<br>Robert R. Axenfeld<br>AXENFELD LAW GROUP, LLC<br>2001 Market St., Suite 2500<br>Philadelphia, PA 19103<br>robert@axenfeldlaw.com<br>(215) 422-3000<br><br>Attorneys for Defendants<br>*Reloaded Merch LLC and Bill Omar Carrasquillo* |